In the Matter of the BOARD OF EDUCATION OF CENTRAL SCHOOL DISTRICT No. 2 OF THE TOWNS OF VIRGIL, HARFORD, LAPEER AND CORTLANDVILLE, Respondent, *v.* JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, Appellant.

Third Department, November 22, 1961.

*Charles A. Brind, John P. Jehu, Elizabeth M. Eastman* and *George B. Farrington* for appellant.

*Folmer, Ryan, Fenstermacher & Yesawich (Paul J. Yesawich, Jr.,* and *Daniel F. Corey* of counsel), for respondent.

*John E. Glenn* for New York State Teachers Association, *amicus curiæ.*

REYNOLDS, J. In October of 1953 the kindergarten teacher of the Central School District No. 2 of the Towns of Virgil, Harford, Lapeer and Cortlandville, Cortland County, submitted her resignation effective November 25, 1953. The principal was unable to secure a new kindergarten teacher and so the fourth grade teacher, Dorothy Young Williams, who was also qualified to teach kindergarten, agreed to teach the kindergarten. The vacancy in the fourth grade was filled by the appointment effective November 30, 1953 of Marion Griswold as a " temporary substitute " and at a substitute's rate of pay. On March 26, 1954 Dorothy Young Williams tendered her resignation effective July 1, 1954 and on May 12, 1954 the Board of Education appointed Marion Griswold as an elementary teacher for a five-year probationary period beginning July 1, 1954. On March 11, 1959 the Superintendent of Schools recommended that Marion Griswold be placed on tenure effective July 1, 1959. On the same date the Board of Education unanimously refused to approve that recommendation and terminated her services as of June 30, 1959. Marion Griswold petitioned the Commissioner of Education contending that the five-year probationary period should have started on November 30, 1953, the effective date of her appointment, and consequently she would have acquired tenure by estoppel on November 30, 1958. There is no dispute that Marion Griswold was paid at a substitute's rate during the period November 30, 1953 to July 1, 1954 or that she originally thought her probationary period started on July 1, 1954, but at the same time the Commissioner found that she felt her position as fourth grade teacher was permanent rather than as a substitute for Mrs. Williams. Dorothy Young Williams also testified that she understood her transfer to the kindergarten to be a permanent one. There is also no dispute that during the entire period from November of 1953 to June 30, 1959 Marion Griswold taught the same fourth grade class.

In July of 1959 a hearing was held in Albany. The acting Commissioner of Education hearing the case ruled in substance that the resignation of the kindergarten teacher created a permanent vacancy which could not be filled by a temporary assignment, that since a kindergarten teacher serves in a different tenure area from an elementary teacher, a recommendation by the District Superintendent and an appointment by the Board of Education was required to transfer the fourth grade teacher to service in the kindergarten and that if this requirement had been complied with, a permanent vacancy would have been created in the fourth grade which also could not be filled by the appointment of a substitute. The Commissioner then held that if the Board of Education had complied with the statutory requirements of the Education Law, Marion Griswold would have had to have been appointed on a probationary basis starting November 30, 1953 and that " the board of education and the superintendent may not now take advantage of their own failure to comply with these statutory requirements, to the injury of appellant."

The court below reversed the Commissioner and held that Marion Griswold's probationary period began July 1, 1954, thus making her dismissal by the board timely. The court below states its reason for this conclusion to be the failure of the Board of Education to have taken formal action in compliance with section 3013 of the Education Law to appoint Marion Griswold to probationary status in November of 1953.

In reviewing determinations of the Commissioner of Education made under section 310 of the Education Law we are limited by the following portion of section 310: " Any person conceiving himself aggrieved may appeal or petition to the commissioner of education who is hereby authorized and required to examine and decide the same; and the commissioner of education may also institute such proceedings as are authorized under this article *and his decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever.*" (Emphasis added.) Despite the " finality " of section 310 the courts have allowed review where the Commissioner's determination was " purely arbitrary " (*Matter of Board of Educ.* v. *Allen,* 6 N Y 2d 127, 136; *Matter of Ross* v. *Wilson,* 308 N. Y. 605, 608). In *Matter of Cochran* v. *Levy* (175 Misc. 666, affd. 263 App. Div. 921) the court stated as the rule in reviewing factual determinations of the Commissioner that such determinations will not be reversed unless it depends " upon such arbitrary and naked power that no reasonable man could reach the

result" (p. 668). In *Matter of Ross* v. *Wilson* (*supra*) the Court of Appeals held that where the school district lacked power to sell a schoolhouse in the manner in which it effected sale, the confirmation of the sale by the Commissioner was purely arbitrary and thus reviewable. In effect the court found arbitrary the Commissioner's ratification of action by the Board of Education which was clearly contrary to the provisions of the Education Law. It has also been held that the rule of section 310 applies as well to statutory construction by the Commissioner (*Levitch* v. *Board of Educ.,* 243 N. Y. 373).

The initial determination that a permanent vacancy in the fourth grade existed in November of 1953 is one of fact. The Commissioner, upon the operative facts presented, has concluded that a permanent vacancy existed. While on viewing the same operative facts we might reach a different determination we cannot conclude that the determination of the Commissioner is " purely arbitrary." We see nothing arbitrary in the Commissioner's choosing to apply by analogy the requirements of sections 2509 and 2573, which specifically relate to city school districts, to rural districts where there was no specific legislation to guide him. Nor do we feel that once a permanent vacancy was found to have existed in November of 1953, it was arbitrary for the Commissioner retroactively to implement the board's appointment under section 3013 to such date. Again there is no reliance on section 2509 or section 2573 but merely a use of them by analogy in making an unprecedented determination. The result of an opposite determination would be that the board could disregard section 3013 and the only redress to the aggrieved teacher would be to institute proceedings to compel compliance. (See *Matter of Frankle* v. *Board of Educ.,* 173 Misc. 1050, mod. 259 App. Div. 1006, affd. 285 N. Y. 541.) The resultant effect on the tenure system is obvious.

The decision should be reversed, without costs.

Bergan, P. J., Gibson and Taylor, J., concur; Coon, J., dissents and votes to affirm for the reasons stated in the opinion of Mr. Justice MacAffer at Special Term. [30 Misc 2d 673.]

Order reversed and petition dismissed, without costs.