OPINION OF THE COURT
Gabrielli, J.
We are called upon to determine whether a board of education may avoid proper application of State laws regulating the grant of tenure to teachers and effectively increase the period of probationary employment provided by law, by the simple expedient of delaying formal appointment of a qualified teacher to an available position which that teacher in fact already fills. We conclude that it may not.
Petitioner was first employed by respondent school district in 1963 as a per diem substitute teacher of woodworking at McKee Vocational High School on Staten Island. In August of 1968, he was licensed as a regular substitute teacher, and continued teaching woodworking at the same school as a regular substitute rather than as a per diem substitute. As such, he appears to have taught a full schedule equivalent to that of a regular teacher. In July, 1971, respondent school district’s board of examiners notified him that he had been licensed as a regular teacher and was being placed on the eligible list for appointment as a regular teacher. In the *389 beginning of the fall 1971 semester, he was originally assigned to teach a full-time woodworking teacher’s schedule as he had in fact been doing for the previous several years. He was not formally appointed a regular probationary teacher at this time, although such appointment was belatedly made several months later in February of 1972. No explanation for this delay has ever been given by respondents.
Petitioner continued teaching a full-time woodworking teacher’s schedule until November of 1971, when he accepted a temporary assignment to the "Absent Teacher Reserve” (ATR), pursuant to which the person so assigned, be he or she a regular teacher or a substitute, fills in for absent teachers each day instead of teaching the same daily schedule. This assignment is one which may be given to either regular or substitute teachers, although regular teachers apparently have the right to reject such an assignment and may bring a grievance if forced to accept it. Substitute teachers have no such choice. In the instant case, petitioner did at first file a grievance because of this assignment but subsequently withdrew his objections. Petitioner’s assignment to ATR was necessary because the teacher originally assigned to that post, a licensed sheet metal teacher, had broken his leg and was unable to move readily from one classroom to another. Accordingly, he was given petitioner’s woodworking classes until his situation should improve. The record does not indicate just how long petitioner remained in ATR, but he seems to have been returned to his regular woodworking schedule by the date of his formal appointment as a probationary regular teacher of woodworking in February, 1972. That appointment did not change petitioner’s actual duties.
In January, 1975, petitioner was notified that he was not being recommended for tenure and that his services were no longer needed. He then commenced this special proceeding challenging the determination of respondent to terminate his services. Petitioner contended, inter alia, that his three-year probationary period should be deemed to have begun not in February, 1972, when he was formally appointed by respondent, but rather in the summer or fall of 1971, when he first became eligible for such appointment and then actually began serving in the position to which he was eventually appointed.[1] *390 So viewed, petitioner’s probationary period ended in 1974, and thus the decision to deny petitioner tenure in 1975 was untimely, as he had already obtained tenure by virtue of the board’s acquiescence in his continued employment after the end of his probationary period. Special Term ruled in favor of petitioner, and ordered that he be reinstated with back pay. Respondents appealed to the Appellate Division, which reversed the order of Special Term,[2] concluding that a probationary period cannot begin to run until the school board formally appoints the teacher. Hence, according to the Appellate Division, petitioner’s probationary period had not yet expired at the time he was discharged, and thus he could not have obtained tenure by virtue of continuing service after the expiration of his probationary period. Petitioner now appeals to this court. We conclude that the order appealed from must be reversed, for a school district may not so easily avoid and escape the mandates of the tenure system established and imposed by the Legislature.
The dispositive issue on this appeal is whether it is possible for a probationary period to commence prior to the date of formal appointment of a teacher by the school board, and that is a question which we have already answered in the affirmative by our decision in Matter of Board of Educ. of City School Dist. of City of Oneida v Nyquist (45 NY2d 975, revg on dissenting opn below 59 AD2d 76). That decision involved a teacher who first began teaching in the Oneida School District pursuant to a Federal program designed to provide employment during periods of high unemployment. The teaching position in which she served was a new one, and she was not appointed to that position by the board until a year after she first actually began teaching in the school. During that first year, she was paid through the county rather than by the *391 school district. Within three years of the date of appointment by the school board, but more than three years after she first began teaching in the school as part of the Federal project, the school district sought to deny her tenure. She successfully appealed that determination to the State Commissioner of Education, and we sustained the determination of the commissioner granting her tenure. In Oneida, as here, it was argued that a teacher may not obtain tenure unless that teacher has served a full probationary period, and that the probationary period cannot commence until there is a formal appointment by the school board, despite any prior period of actual service in the same period. We rejected the second prong of that argument in Oneida, and we see no reason to accept it today.[3]
A school district may not avoid strict application of the statutory scheme for granting tenure to qualified and experienced teachers by the stratagem of unduly delaying formal appointment of a teacher to a position which that teacher is in fact already filling. The tenure system is not an arbitrary mechanism designed to allow a school board to readily evade its mandate by the creation of technical obstacles on a qualified teacher’s trail to tenure (see Matter of Baer v Nyquist, 34 NY2d 291). Rather it is a legislative expression of a firm public policy determination that the interests of the public in the education of our youth can best be served by a system designed to foster academic freedom in our schools and to protect competent teachers from the abuses they might be subjected to if they could be dismissed at the whim of their supervisors. In order to effectuate these convergent purposes, it is necessary to construe the tenure system broadly in favor of the teacher, and to strictly police procedures which might result in the corruption of that system by manipulation of the requirements for tenure. This is not to suggest that the school board in this instance acted with bad faith or from any improper motive. Even "good faith” violations of the tenure system must be forbidden, lest the entire edifice crumble from the cumulative effect of numerous well-intentioned exceptions.
Since the Legislature has deemed it necessary to create a detailed system to provide security for teachers, it follows that *392 a school district may not validly increase the requirements for tenure established by the State (see Matter of Mannix v Board of Educ., 21 NY2d 455), although it may, of course, provide teachers with greater security than that mandated by statute, at least in the absence of any violation of public policy (see Matter of Schlosser v Board of Educ., 47 NY2d 811. Similarly, a school district may not artificially increase the length of the probationary period established by State law, either directly or indirectly by unduly delaying the formal appointment of a teacher to a particular position which that teacher in fact fills.
In the case before us, petitioner appears to have provided satisfactory service as a regular, full-time substitute for several years, although he was not qualified for appointment as a regular teacher because he was not licensed for such a position. When he finally did obtain his license as a regular teacher and was placed on the eligible list for appointment, respondents delayed some seven months before making that appointment, although, as is clear from the record, there did exist an available position, namely, that in which he himself was serving as a regular substitute and to which he eventually was appointed. No explanation for this seven-month delay has ever been proffered by respondents, and we refuse to allow this dilatory behavior to adversely affect petitioner’s right to tenure. Hence we conclude that petitioner’s probationary period must be deemed to have commenced, at the very latest, with the beginning of school in the fall 1971 semester. Thus, his probationary period terminated in 1974, and since respondents continued to employ petitioner as a teacher following the expiration of his probationary term, he must be deemed to have acquired tenure. While the decision whether to award tenure to a teacher is one entrusted by law to the school board alone (Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774), that body must act expeditiously, and its failure to act in a timely manner, combined with its continued employment of an eligible teacher, leads to an award of tenure by operation of law (see Matter of Baer v Nyquist, 34 NY2d 291, supra). Any other result would serve as an invitation to at least temporarily evade the mandates of the tenure system.
Our decision today turns in large part on the peculiar and undisputed operative facts presented on this appeal. Of particular import are the fact that petitioner was indeed *393 serving as a full-time teacher of woodworking at McKee during the fall 1971 semester and the fact that petitioner was subsequently appointed by the board to that same position. A school board remains free, of course, to determine whether to appoint a particular person to a particular position, and is-under no obligation to appoint a substitute teacher employed in the district to a regular position simply because that teacher subsequently is licensed as a regular teacher, except insofar as such appointment may be mandated by contract or some other provision of law. Moreover, service as a substitute does not constitute probationary service for purposes of obtaining tenure as a regular teacher, except as is provided by law (see Education Law, § 2509, subd 1, par [a]) or contract. Finally, we note that regardless of any actual service, no person not fully and properly qualified may obtain tenure in a particular position (see Matter of Board of Educ. v Nyquist, 31 NY2d 468).
One final point requires our consideration. The Appellate Division reversed the order and judgment of Special Term on the law alone, and thus we would be required to remit this matter to the Appellate Division for review of the facts were there any dispute over the operative facts (CPLR 5613). Our examination of the record, however, persuades us that there exists no actual dispute as to the facts upon which we have premised our decision. Respondents argued at Special Term that petitioner did not serve continuously during the fall 1971 semester in a regular teaching position, and thus that service could not in any event be credited towards his probationary period. This argument was based on two alternative assumptions of law, both of which we reject. First, respondents suggest that simply because the regular, full-time woodworking teacher’s schedule to which petitioner was originally assigned in the fall 1971 semester was first assigned to him before he obtained his regular teaching license, it cannot be considered a regular teaching position. This argument is fallacious, as we are concerned not with the changing labels placed upon the position by respondents, but rather with the realities of the position and its accompanying duties. Respondents do not suggest that petitioner’s schedule for that semester was any different from that of a regular woodworking teacher’s schedule, nor do they indicate any basis for considering what is actually the same position something other than a regular position in the fall of 1971 and yet denominating it a *394 regular position in February, 1972, when petitioner was finally "appointed” to that position.[4]
Alternatively, respondents suggest that petitioner’s service in ATR for a part of the fall 1971 semester precludes that semester from counting as a part of his probationary period even if his probationary period may be deemed to have commenced prior to formal appointment by the board. While this argument might be of some interest were petitioner seeking credit for prior service as a substitute (see Education Law, § 2509, subd 1, par [a]), it is simply irrelevant to a determination of whether petitioner has in fact served for a full probationary period. This is so because the decision of a probationary teacher to accept a temporary assignment out of position in order to accommodate the needs of the school district does not serve to disrupt that teacher’s probationary period, nor may it lead to an increase in the length of that probationary period. Since there exists no actual dispute as to the legally significant facts, and petitioner is entitled as a matter of law to back pay and reinstatement, it would serve no purpose to remit this matter to the Appellate Division (see Cohen and Karger, Powers of the New York Court of Appeals, § 173).
. Accordingly, the order appealed from should be reversed, with costs, and the order and amended judgment of Special Term should be reinstated.

. Petitioner obtained his license pursuant to special procedures provided in section 2569-a of the Education Law for the licensing of experienced substitute teachers who meet certain qualifications. Since this section specifically states that persons so *390 appointed "shall accept employment under a three-year probationary period which shall not be reduced by reason of any prior substitute service”, petitioner was not entitled to any credit for his many years of experience as a substitute, as he would have been had he obtained his license and his appointment through more normal means (see Education Law, § 2509, subd 1, par [a]).

. The Appellate Division did award petitioner five days’ back pay with interest because of what it deemed to be an error in the procedures utilized to discharge petitioner. Petitioner contended in both courts below, and before this court as well, that his discharge was fatally tainted because of the use of improper procedures by respondents. Since we have determined that petitioner is entitled to reinstatement and full back pay on the ground that he did obtain tenure, we deem it unnecessary to consider petitioner’s alternative arguments.

. It may be suggested that, because we were reviewing a determination of the commissioner in Oneida, our scope of review was more restricted. Whether there must be the formality of appointment by the board, however, is an issue of law which would in no way have been excluded from our consideration in Oneida. We concluded there, as we do here, that the law does not require such formality.

. We note in passing that we find respondents’ apparent use of regular substitutes rather than regularly appointed teachers to fill what would seem to be permanent positions disturbing (see Matter of Board of Educ. v Allen, 14 AD2d 429, affd without opn 12 NY2d 980).