90 N.Y.2d 110 (1997)
681 N.E.2d 366
659 N.Y.S.2d 199
In the Matter of Mindy Speichler, Appellant,
v.
Board of Co-Operative Educational Services, Second Supervisory District, Respondent.
Court of Appeals of the State of New York.
Argued March 19, 1997
Decided May 6, 1997.
Richard Charles Hamburger, P. C., Melville (Richard Hamburger, Lane T. Maxson and David H. Pearl of counsel), for appellant.
Rains & Pogrebin, P. C., Mineola (Richard G. Kass and David M. Wirtz of counsel), for respondent.
James R. Sandner, New York City, and Paul H. Janis for New York State United Teachers, amicus curiae.
Judges TITONE, BELLACOSA, CIPARICK and WESLEY concur with Chief Judge KAYE; Judge LEVINE dissents and votes to affirm in a separate opinion in which Judge SMITH concurs.
*112 Chief Judge KAYE.
Pursuant to Education Law § 2509 (1) (a), a teacher can apply service as a "regular substitute" toward completion of the three-year probationary term required for tenure. At issue here is whether a teacher can be credited for the time he or she substitutes for a teacher who is on leave for an indefinite period. We conclude that the ambiguous statutory term "regular substitute" should be defined by the actual nature and continuity of the substitute service, not by the anticipated duration of the replaced teacher's absence.
On November 1, 1989, petitioner Mindy Speichler began work as a "per diem substitute" teacher of special education with respondent Board of Cooperative Educational Services (BOCES), an entity charged with providing shared services to various school districts in Suffolk County. BOCES labels as "per diem substitutes" teachers hired for an indefinite period to cover the absences of regular teachers and other staffing contingencies. They are paid at a daily rate and have limited employment benefits. By contrast, BOCES labels as "regular substitutes" teachers who receive a special appointment for a fixed time, when a salary line is temporarily opened by the leave of a regular teacher. Regular substitutes receive a prorated annual salary with full benefits.
Petitioner was assigned to teach the class of Peter Meyers, a regular teacher who had been moved to a smaller special education class for an indeterminate duration. She taught Meyers' class every day that semester and the next. Although her teaching responsibilities remained the same, on March 21, 1990 petitioner's formal status changed. Because a regular teacher, Michelle Nevis, had been granted a child care leave, a salary line opened and petitioner (who was certified as a special education teacher on February 1, 1990) received a special appointment as a regular substitute for the balance of the 1989-1990 school year.
In the BOCES system, per diem substitutes are placed in a pool at the beginning of each school year, which consists of two five-month terms (September-January and February-June). When a line opens during the school year, BOCES gives that line to the most senior per diem substitute in the pool but leaves the substitute in the class he or she is teaching at that time. Thus, although petitioner, the most senior per diem substitute, filled Nevis' line, she continued to teach Meyers' class every day, as she had done since November 1989.
*113 Petitioner returned to BOCES the following school year (1990-1991), again as a per diem substitute. At that time, she was asked to cover the class of Robert Aiken, who had been temporarily assigned to serve as a coordinator at the school while an assistant principal, Audrey Bernard, took a child care leave for an unspecified time period. As she did for Meyers, petitioner taught Aiken's class every day during his absence.
In December 1990, Bernard returned from leave and Aiken reclaimed his class from petitioner. However, during petitioner's time as Aiken's replacement, a new class and a new line were created for a regular teacher. BOCES formally appointed petitioner to a probationary special education teaching position, effective December 17, 1990, and informed petitioner that her probationary term would expire December 17, 1993.
During her probationary period  unlike her nine months as a substitute for Meyers and Aiken  petitioner was formally evaluated by school officials. On October 20, 1993, BOCES notified petitioner that she would not be recommended for tenure and would be discharged effective December 16, 1993.
Petitioner then commenced a CPLR article 78 proceeding seeking to annul BOCES' determination on the ground that she had actually completed her three-year probationary term in November 1992 and thus had acquired tenure by estoppel. More specifically, petitioner claimed that for the 11 months preceding her probationary appointment, she had in fact been employed by BOCES as a full-time "regular substitute" and was therefore entitled to 11 months of "Jarema credit" toward tenure under Education Law § 2509 (1) (a).
Supreme Court granted her petition and reinstated her as a full-time, tenured teacher retroactive to February 1, 1993 with back pay, noting that since "functionally" petitioner had been a regular substitute teacher from February 1, 1990 to December 17, 1990 and such period satisfied the "one full term requirement," she was entitled to Jarema credit for both the spring and fall 1990 terms. On BOCES' appeal, the Appellate Division reversed, holding that because she had replaced a teacher reassigned for an indeterminate period of time, petitioner's service as a per diem substitute was not the equivalent of service as a regular substitute and therefore she did not have a clear legal right to tenure by estoppel (227 AD2d 635). We now reverse.

Analysis
The Education Law requires a probationary period of three years for a certified teacher to secure tenure (Education Law § 3014 [1]; *114 see also, Education Law §§ 3001, 3006, 3010; Matter of Bradford Cent. School Dist. v Ambach, 56 N.Y.2d 158, 163). Unlike tenured teachers  who can hold their positions during good behavior and competent service, and are subject to dismissal only after formal disciplinary proceedings (Education Law §§ 3020-a, 3014 [2])  probationary teachers can be terminated at any time during the probationary period, for any reason and without a hearing (Education Law § 3014 [1]; Matter of Venes v Community School Bd., 43 N.Y.2d 520, 525; James v Board of Educ., 37 N.Y.2d 891, 892).
Upon recommendation of the district superintendent of schools, BOCES must grant or deny tenure during the probationary term, and if not recommended for tenure a teacher must receive written notice no later than 60 days before expiration of the probationary term (Education Law § 3014 [2]). Tenure by estoppel results "when a school board accepts the continued services of a teacher or administrator, but fails to take the action required by law to either grant or deny tenure prior to the expiration of the teacher's probationary term" (Matter of McManus v Board of Educ., 87 N.Y.2d 183, 187).
The three-year probationary period can, however, be reduced to one year through "Jarema credit," named for the bill's sponsor, Assemblyman Stephen J. Jarema (see, Mem in Support, Bill Jacket, L 1936, ch 680, at 36-37). As provided in Education Law § 2509 (1) (a),
"in the case of a teacher who has rendered satisfactory service as a regular substitute for a period of two years * * * the probationary period shall be limited to one year."[1]
Jarema credit cannot exceed two years. The "regular substitute" service, moreover, must be performed before the probationary appointment begins (Matter of Robins v Blaney, 59 N.Y.2d 393, 398-399). And it must be continuous for at least one school term (Matter of Lifson v Board of Educ., 66 NY2d at 898, supra; see also, Appeal of Czajkowski, 34 Ed Dept Rep 589, 592 [rejecting teacher's claim to Jarema credit based on incomplete term of regular substitute teaching]).
Here, petitioner claims that she acquired tenure by estoppel based on actual continuous service as a special education *115 substitute at least from February 1, 1990 (the date of her certification) to December 17, 1990 (the date of her probationary appointment). BOCES, however, argues that when determining Jarema credit, the relevant inquiry is not whether, measured by hindsight, petitioner taught continuously for at least one full term; rather, what is important is whether BOCES was aware at the beginning of the term that petitioner was filling a vacancy created by a definite leave of absence of a term or more.
The essential difference, thus, centers on the meaning of the ambiguous term "regular substitute," which is not defined in the statute. Petitioner urges a test based on the nature and continuity of the service actually performed. BOCES, by contrast, claims that "regular substitute" can only be defined by the anticipated duration of the replaced teacher's absence. Neither the statute nor its legislative history provides the answer.
BOCES insists that the distinction it advances between "definite" and "indefinite" absences of replaced teachers  BOCES' key to defining service as a "regular substitute"  is found in decisions of the Commissioner of Education. While not binding on the Court, the Commissioner's decisions offer useful guidance (see, Matter of McManus v Board of Educ., supra, at 188).
The distinction between "definite" and "indefinite" absences can be traced to the Commissioner's decision in Matter of Ducey (65 NY St Dept Rep 65). There the issue was whether a teacher should receive seniority credit for full-time regular substitute service rendered prior to the teacher's probationary appointment. By analogy to Jarema credit, the Commissioner recognized that substitute service can be classified as either "regular" or "itinerant," and that only the former counted toward reduction of the three-year probationary period. A "regular substitute," according to the Commissioner, "is one who takes over the class of another teacher upon a permanent substitute basis; i.e., under circumstances where the regular teacher for maternity reasons, or for sabbatical or sick leave, or for some other reason, has been given a definite leave of absence. This contemplates a regular assignment for at least a term" (id., at 67). An "itinerant substitute," by contrast, is "a person who is called in for a half a day, for short periods or for a week or more, to take the place of a teacher who is temporarily absent because of sickness or otherwise" (id., at 67). Plainly, the Commissioner used the phrase "definite leave of absence" not as an essential element of regular substitute service *116 but as illustrative of factors distinguishing a "regular" from an "itinerant" substitute.
Most significantly, the Commissioner in Ducey cautioned school districts not to use technicalities to deny teachers credit for actual regular substitute service. "The failure of a board of education to `assign' for a definite term and to pay upon an annual basis would not, however, alter the status of the teacher as a regular substitute if it appears as a matter of fact that she has taught regularly during the term" (id., at 67). Thus, the lesson of Ducey is not that rigid lines must be drawn between "definite" and "indefinite" absences in determining the status of a substitute teacher but rather that the conclusion should be based on the substitute's actual service.
Matter of Waterman (13 Ed Dept Rep 68) and Matter of Artale (13 Ed Dept Rep 84) underscore that lesson. As the Commissioner recognized in Waterman, "while petitioner may have been hired as a per diem substitute teacher to perform her services on an itinerant basis, she did in fact perform the duties of a regular substitute teacher. As a regular substitute, petitioner was entitled to the credit which respondent gave for her services in this capacity" (13 Ed Dept Rep at 70).[2] Similarly, in Artale, the Commissioner reaffirmed the principle that a "[p]etitioner is entitled to credit as a substitute teacher whether he was hired as a per diem substitute or as a regular substitute if he in fact performed the duties of a regular *117 substitute continuously for a term or more in the area in which he was originally employed" (13 Ed Dept Rep at 86).[3]
We therefore cannot agree with BOCES that the Commissioner of Education reads service as a "regular substitute" to depend on the nature of the replaced teacher's absence, and indeed find support in those decisions for petitioner's position that what controls is the character of the teacher's actual service.
While this Court has not decided the precise issue before us, we have in other contexts made clear that tenure rules should be read broadly in favor of the teacher and that function rather than label should control when a probationary period commences.
As we explained in Ricca v Board of Educ. (47 N.Y.2d 385), for example,
"[t]he tenure system is not an arbitrary mechanism designed to allow a school board to readily evade its mandate by the creation of technical obstacles on a qualified teacher's trail to tenure. * * * Rather it is a legislative expression of a firm public policy determination that the interests of the public in the education of our youth can best be served by a system designed to foster academic freedom in our schools and to protect competent teachers from the abuses they might be subjected to if they could be dismissed at the whim of their supervisors" (id., at 391 [citation omitted]).
In establishing that the tenure system is to be viewed "broadly in favor of the teacher," we made clear in Ricca that "[e]ven `good-faith' violations of the tenure system must be forbidden, lest the entire edifice crumble from the cumulative effect of numerous well-intentioned exceptions" (id., at 391; see also, Matter of Gould v Board of Educ., 81 N.Y.2d 446, 451 ["(i)t is of no legal significance that respondents did not know that petitioner's continued employment would enable her to acquire tenure by estoppel"]). Noting that "we are concerned not with *118 the changing labels placed upon the position by respondents, but rather with the realities of the position and its accompanying duties," this Court in Ricca reversed the Appellate Division and ordered petitioner reinstated with tenure, measuring his probationary period from the date of his eligibility for, rather than formal appointment to, that position (47 NY2d at 392-393).
Similarly, in Matter of McManus v Board of Educ. (87 N.Y.2d 183, supra), we concluded that the school district's label "acting" principal could not mask the fact that petitioner was in fact performing probationary service. Echoing the principles spelled out in Ricca, we stated: "Inasmuch as probationary periods are employed to determine if appointees are `competent, efficient and satisfactory' for purposes of recommending tenure, there is no reason why petitioner's service following her initial appointment should be considered anything less than time accrued towards reducing the official three-year probationary period the statute requires. Tenure evaluations can be made after three years regardless of the title under which the probationer serves and a Board may not undermine the policies behind the tenure system and artificially extend the probationary period by designating a position `acting' or `temporary'" (id., at 187-188).
As often happens in cases that reach us, good arguments are made on both sides of the issue. In particular, BOCES urges that the salutary purpose of the definite term requirement is predictability  that only when a substitute teacher replaces a teacher expected to be absent for a definite period is the district aware that the teacher will be accumulating Jarema credit and that it must allocate administrative resources for evaluation. To sanction a "surprise" acquisition of tenure by estoppel, argues BOCES, would both saddle school districts with the administrative burden of tracking the probationary term for teachers on a day-to-day basis and deny them the full three years in which to consider qualifications for tenure.
Such an argument, however, assumes the wrong perspective on the tenure rules, which this Court has made clear should be read so as to discourage a board's use of technical obstacles and manipulable labels that can deprive a qualified teacher of tenure rights (see, e.g., Ricca v Board of Educ., supra, at 391; Matter of Gould v Board of Educ., supra, at 452; Matter of Baer v Nyquist, 34 N.Y.2d 291, 299).
Nor does the distinction between "definite" and "indefinite" leaves in fact assure BOCES predictability or certainty, as illustrated *119 by Appeal of MacPherson (25 Ed Dept Rep 124). Rejecting petitioner's claim that an enforceable contract existed for the entire year when he was appointed, effective September 1, 1984 through June 30, 1985, to teach the classes of a suspended teacher awaiting disciplinary charges, the Commissioner noted that:
"petitioner was employed by respondent as a regular substitute teacher, in the usual sense of that term. A regular substitute teacher is one who takes over the class of a probationary or tenured teacher on a permanent substitute basis  that is, for a period expected to be a term or more (Matter of Ducey, 65 St Dept Rep 65). The position in which the regular substitute teacher serves remains encumbered by the probationary or tenured teacher" (id., at 126).
MacPherson both supports the view that a "definite term" is not a requirement for regular substitute service and demonstrates that even where a regular substitute is engaged for a "definite term" to replace a tenured teacher, the absence may end unexpectedly and the tenured teacher can insist upon early return to the encumbered position.
What we learn from Ricca and McManus, as well as from Waterman and Artale, is that it is not so much the "expectancy" as the actual fact that determines outcome. Here, petitioner taught class continuously  every school day, Monday through Friday  for at least one full semester before her formal appointment to a probationary term. Had she missed even a few days, she might not have qualified for Jarema credit (see, Appeal of Czajkowski, 34 Ed Dept Rep at 591-592, supra). If indeed there is an "administrative burden" in evaluating teachers who stand before a class every single day for the full semester, that is surely in the interest of the students and all concerned.
In the end it is these policy considerations that are highly persuasive in answering the novel question before us.[4] We therefore conclude that petitioner earned Jarema credit beginning *120 February 1, 1990, which combined with her additional service entitled her to tenure.
BOCES' remaining contentions are without merit.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of the Supreme Court, Suffolk County, reinstated.
LEVINE, J. (dissenting).
I respectfully dissent. The salient facts of this case are not in dispute. Petitioner taught the class of a permanent Board of Cooperative Educational Services (BOCES) teacher named Peter Meyers from November 1989 to the end of the 1990 spring term. During the early part of that period, she lacked certification to be appointed as a permanent teacher, having not yet passed the National Teachers' Examination. Meyers's absence from his regular classroom was due to an indeterminate assignment, which could have ended at any time. Petitioner's status for all of her service in replacing Meyers during the 1989 fall term and until March 21 of the 1990 spring term was as a per diem substitute special education teacher. On that latter date, she was appointed as a regular substitute teacher, filling a formal vacancy attributable to a leave of absence granted another permanent teacher for a definite period ending June 30, 1990.
At the beginning of the fall 1990 term, petitioner resumed her status as a per diem substitute and filled in continuously for another teacher on an indefinite outside assignment, until she received a probationary appointment as a permanent teacher December 17, 1990. BOCES advised petitioner that her probationary period for tenure purposes would end December 17, 1993.
In October 1993 BOCES notified petitioner that she was not recommended for tenure and would be terminated at the end of her probationary period that December. The termination of petitioner's position within three years of her formal probationary appointment ordinarily would be impregnable to challenge, unless as the majority concludes, she achieved tenure by estoppel. Application of the tenure by estoppel doctrine here is entirely dependent upon whether petitioner's per diem substitute teaching, at least from the point of receiving teacher certification on February 1, 1990, was eligible to be credited toward her three-year probationary term under the so-called "Jarema Act" (L 1936, ch 680; see, Education Law § 2509 [1] [a]).
Under the Jarema Act, "a teacher who has rendered satisfactory service as a regular substitute" (emphasis supplied) may *121 be credited up to a maximum of two years of such service toward the probationary period. We have upheld statutory interpretations of the Act by the State Commissioner of Education that, minimally, Jarema Act credit requires continuous regular substitute service for one full term (Matter of Lifson v Board of Educ., 66 N.Y.2d 896, 898), and that the service must precede the formal probationary appointment (Matter of Robins v Blaney, 59 N.Y.2d 393, 398-399).
The majority concludes that, because ultimately  as it turned out in fact  petitioner continuously filled in for one teacher in one classroom for the entire 1990 spring school term and continuously for another teacher in the succeeding fall term, until her formal probationary appointment, relieving those teachers constituted regular substitute service, entitling her to some nine months' Jarema credit toward her probationary term. With such credit, BOCES would have had to make a tenure decision on petitioner months earlier than October 1993, and its failure to do so resulted in tenure by estoppel.
The majority candidly acknowledges that the statutory phrase "service as a regular substitute" in the Jarema Act is ambiguous. The majority purports to find support for its interpretation here from decisions by the Commissioner of Education and by references to the policy foundation for our tenure by estoppel doctrine. I find neither supports the majority's interpretation. Indeed, I am of the opinion that the majority's purely retrospective functional criterion for regular substitute service is contrary to the prevailing view of the Commissioner of Education regarding Jarema credit in tenure disputes and is incompatible with the underlying reasons for our tenure by estoppel doctrine. Moreover, it will create uncertainty in a probation/tenure area especially requiring predictability and consistency.
Turning first to the meaning of regular substitute service as interpreted in Commissioner of Education decisions, I agree that the foundational case is Matter of Ducey (65 NY St Dept Rep 65 [1943]). The Ducey opinion is unambiguous in its essential definition of a "regular substitute" under the Jarema Act as "one who takes over the class of another teacher upon a permanent substitute basis; i.e., under circumstances where the regular teacher * * * has been given a definite leave of absence" (id., at 67 [emphasis supplied]). In Ducey the Commissioner explained that service as a substitute "upon a permanent basis" has financial, administrative and budgetary ramifications. It "contemplates a regular assignment for at *122 least a term" (id., at 67 [emphasis supplied]). A "regular substitute teacher should be paid upon an annual basis (as a substitute) and would be entitled to membership in the teachers' retirement system" (id., at 67).
Of particular significance for purposes of this appeal, the Ducey decision placed a flat restriction on regular substitute appointments. In unmistakable terms, the Commissioner directed that "[b]oards of education may not legally employ teachers upon a regular substitute basis unless there exists the type of vacancy above outlined for such service" (id., at 67 [emphasis supplied]). Thus, a prospective, temporally defined, authorized period of absence of the regular teacher, is not merely "illustrative of factors distinguishing" regular substitute service from itinerant service, as the majority suggests (majority opn, at 116). Such a prospective, fixed period of absence extending for at least a full term is the "type of vacancy" which, according to the Commissioner, is the necessary condition precedent for any legal employment of a teacher as a regular substitute (Matter of Ducey, supra). It is self-evident that a retrospective determination of service as a regular substitute for Jarema tenure purposes, because the permanent teacher's indefinite absence happened ultimately to extend to a term or more, is entirely incompatible with the requirement of Ducey that the appropriate type of vacancy must exist at the inception of employment for Jarema tenure credit to be achieved.
The foregoing is not undercut by the statement of the Commissioner of Education in Ducey, so heavily relied upon by the majority (see, majority opn, at 116), that tenure seniority would not be defeated by the absence of a formal assignment of the substitute for a definite term, if in fact that person "taught regularly during the term" (Matter of Ducey, supra, at 67). Whether substitute service is regular or itinerant under Ducey remains dependent on the nature of the absence of the substituted-for teacher. The Commissioner in Ducey merely held that if the type of vacancy is presented which permits the lawful employment of a regular substitute (i.e., resulting from a definite leave of absence), Jarema credit cannot be avoided, even for a per diem substitute teacher, if that person actually filled the position for the requisite period.
Succeeding Commissioners have adhered to Ducey's essential concept of regular substitute service for tenure calculation purposes as service in replacement of a teacher on a leave of absence prospectively fixed for at least a full school term. As recently as 1995, the Commissioner of Education expressly *123 cited to the Ducey standard as an alternative ground for denying tenure status (see, Appeal of Czajkowski, 34 Ed Dept Rep 589, 592). It is noteworthy that the definite leave of absence requirement was reaffirmed in that tenure case, although much earlier the Commissioner modified Ducey in the context of seniority and salary claims, adopting a functional approach similar to that of the majority here (see, Matter of Nuzzi, 8 Ed Dept Rep 97, petition dismissed sub nom. Matter of Board of Educ. v Nyquist, 60 Misc 2d 99; Matter of Matera, 17 Ed Dept Rep 459). However, the Commissioner has repeatedly recognized that different considerations continue to apply when regular substitute service is being considered for tenure purposes (see, Appeal of Carey, 31 Ed Dept Rep 394; Matter of Crandall, 20 Ed Dept Rep 16).
Matter of Artale (13 Ed Dept Rep 84) and Matter of Waterman (13 Ed Dept Rep 68) cited by the majority (majority opn, at 116-117) are not precedents to the contrary and do not signify any abandonment of the Ducey requirement that a regular substitute must replace a teacher on a "permanent substitute basis; i.e., * * * where the regular teacher * * * has been given a definite leave of absence" (Matter of Ducey, supra, 65 NY St Dept Rep, at 67). In Artale, the petitioner substituted for a teacher on a maternity leave, an example of definite leave referred to in the Ducey decision. And in Waterman, the circumstances under which the regular teacher's absence took place are not described. Thus, both cases may stand for nothing more than the Ducey dictum that, if the appropriate type of durationally definite vacancy exists for appointment as a regular substitute, tenure credit for continuous service of at least one term cannot be avoided.
I also am of the view that imposing tenure by estoppel through a retrospective determination of regular substitute service, based entirely on continuous in fact substitute teaching for a term, is actually inconsistent with the principles and policies giving rise to that doctrine. The essential teaching of our tenure by estoppel cases is that a Board of Education should get no more, and no less, than the full time span provided by statute for a probationary period, within which to assess the competence of a probationary teacher for appointment to a permanent position. Thus, in Matter of McManus v Board of Educ. (87 N.Y.2d 183), we held that a school board could not manipulate the appointment process to extend the probationary period beyond three years, by initially assigning the petitioner as an "acting principal" to perform the duties of *124 Middle School Principal after a vacancy in that position had occurred. The McManus decision emphasized the equitable underpinning of the tenure by estoppel doctrine, whereby the drastic remedy is imposed "when a school board accepts the continued services of a teacher or administrator, but fails to take the action required by law to either grant or deny tenure" prior to the end of the three-year probationary period (id., at 187). Likewise, in Ricca v Board of Educ. (47 N.Y.2d 385), we said:
"[A] school district may not artificially increase the length of the probationary period established by State law, either directly or indirectly by unduly delaying the formal appointment of a teacher to a particular position which that teacher in fact fills" (id., at 392).
The corollary to the principle that a probationary term may not be extended beyond the statutory period is that a school board is entitled to the full period provided by law for determining whether to grant tenure to a probationary teacher. This requires, in the first instance, that there be an open position in that title, to which a formal appointment can actually be made before tenure by estoppel can be imposed for the delay in making the formal appointment. In other words, a Board of Education cannot be estopped from denying tenure credit for a period during which it could not make a probationary appointment. As we pointed out in Ricca (supra), the objectionable conduct of the school district was that, despite the fact that the petitioner was eligible for formal appointment "respondents delayed some seven months before making that appointment, although, as is clear from the record, there did exist an available position, namely, that in which he himself was serving as a regular substitute and to which he eventually was appointed" (47 NY2d, at 392 [emphasis supplied]). Again, in McManus (supra), we relied upon the fact that the "[p]etitioner was filling a position left vacant by the termination of the prior Middle School Principal" (87 NY2d, at 189 [emphasis supplied]), and, thus, could not be considered as merely performing substitute service.
Affording a Board of Education a genuine opportunity to use the full probationary time period under the statute to make the tenure decision also means that legislative provisions giving tenure credit for categories of service before the beginning of a formal probationary appointment (such as under the *125 Jarema Act) are to be strictly construed and not extended by expansive judicial interpretation in ruling on a claim of tenure by estoppel (see, Matter of Carpenter v Board of Educ., 71 N.Y.2d 832, 834; Matter of Roberts v Community School Bd., 66 N.Y.2d 652, 656).
Moreover, we have upheld a restrictive construction of the Jarema Act by the Commissioner of Education, as rationally based, "because it is intended to preserve distinctions between regular and substitute service and to thereby limit claims of tenure by estoppel inadvertently acquired" (Matter of Robins v Blaney, supra, 59 NY2d, at 399).
These considerations militate against applying tenure by estoppel here by giving Jarema Act tenure credit to petitioner for the period in which she was substituting on a per diem basis for a teacher on an indefinite assignment outside of the classroom. First, as Ducey and its progeny show, the concept of regular substitute service for tenure purposes contemplates the existence of a vacancy, temporary but of a definite duration, approved by the Board of Education as a leave of absence of the substituted-for regular teacher. It follows that, without the existence of an administratively fixed leave of absence of the regular teacher for a term or more, no appointment of petitioner as a regular substitute could have been made here, and respondents should not be estopped from denying tenure credit to petitioner for a period in which they were without legal power to employ her as such. The policy identified by the majority, to "discourage a board's use of technical obstacles and manipulable labels" to deny probationary tenure credit (see, majority opn, at 118), is only implicated when a true probationary appointment could have been made. Hence, the majority's policy concerns are inappropriate to the disposition of this appeal.
By the same token, employing a retrospective, functional test which awards tenure credit for substitute service merely if, ultimately, there had been continuous substitution in the same classroom for a full term or more, deprives both a Board of Education and the probationary teacher of the full period fixed by statute for a proper assessment of educational competence of the appointee.
Thus, we should adhere to the Ducey interpretation of the Jarema Act which equates "service as a regular substitute" (Education Law § 2509 [1] [a]), for tenure credit purposes, with substitution for a regular teacher on a definite leave of absence. *126 That interpretation is appropriate because "it is intended to preserve distinctions between [regular and itinerant] substitute service and to thereby limit claims of tenure by estoppel inadvertently acquired" (Matter of Robins v Blaney, supra, 59 NY2d, at 399). It is entirely consistent with the principles of equity underlying tenure by estoppel and it also promotes predictability of result in tenure disputes and puts teachers and administrators on immediate notice of when Jarema Act credit begins.
For all of the foregoing reasons, I would affirm the order of the Appellate Division dismissing the petition.
Order reversed, etc.
NOTES
[1] Although BOCES tenure provisions are set forth in section 3014 of the Education Law, the Jarema credit provision of section 2509 (1) (a) has been applied to BOCES (see, Lifson v Board of Educ., 124 Misc 2d 483, 485, affd 109 AD2d 743, affd 66 N.Y.2d 896). Neither party contests its general applicability here.
[2] The dissent would distinguish Waterman on the ground that the "circumstances under which the regular teacher's absence took place are not described." (Dissenting opn, at 123). Of much greater significance, however, is what is described in Waterman. The teacher was employed to "perform her services on an itinerant basis"  in other words, to replace teachers absent for short-term, indefinite periods  but nonetheless earned Jarema credit because her actual substitute service was continuous. Waterman thus undercuts the dissent's insistence that Ducey flatly restricted lawful "regular substitute" service to fixed absences.

Moreover, as the dissent acknowledges, the Commissioner in seniority and salary credit cases has explicitly rejected a "definite term" requirement in favor of a functional approach to regular substitute service (see, Matter of Matera, 17 Ed Dept Rep 459, 460; Matter of Nuzzi, 8 Ed Dept Rep 97, 98-99, petition dismissed sub nom. Matter of Board of Educ. v Nyquist, 60 Misc 2d 99; compare, Appeal of Carey, 31 Ed Dept Rep 394, 396 ["(t)here is a distinction between Jarema credit and seniority credit"], with Matter of Silver, 19 Ed Dept Rep 444, 448 ["(t)here is no basis in logic for distinguishing between credit for the purpose of completion of a probationary period and credit for seniority"]).
[3] BOCES wrongly contends that Matter of Axel v Board of Educ. (44 N.Y.2d 667)  a case where teachers sought seniority credit for continuous substitute service rendered under per diem certificates issued by the New York City Board of Education  "implicitly discredited" the rationale advanced in Waterman and Artale. Rather than a rejection of the Commissioner's Jarema credit rulings, our holding was narrow: that the terms of the relevant collective bargaining agreement and by-laws precluded relief.
[4] The dissent does not address the policy concerns but instead rests on a reading of particular decisions of the Commissioner of Education. While we disagree with the dissent's view of those decisions and believe our reading is in line with those administrative holdings, we note that how the Commissioner might answer the question we now confront would not in any event supplant this Court's independent responsibility to interpret the statute. Nor can we agree with the dissent's narrow reading of our own tenure cases.