*112 OPINION OF THE COURT
Chief Judge Kaye.
Pursuant to Education Law § 2509 (1) (a), a teacher can apply service as a "regular substitute” toward completion of the three-year probationary term required for tenure. At issue here is whether a teacher can be credited for the time he or she substitutes for a teacher who is on leave for an indefinite period. We conclude that the ambiguous statutory term "regular substitute” should be defined by the actual nature and continuity of the substitute service, not by the anticipated duration of the replaced teacher’s absence.
On November 1, 1989, petitioner Mindy Speichler began work as a "per diem substitute” teacher of special education with respondent Board of Cooperative Educational Services (BOCES), an entity charged with providing shared services to various school districts in Suffolk County. BOCES labels as "per diem substitutes” teachers hired for an indefinite period to cover the absences of regular teachers and other staffing contingencies. They are paid at a daily rate and have limited employment benefits. By contrast, BOCES labels as "regular substitutes” teachers who receive a spécial appointment for a fixed time, when a salary line is temporarily opened by the leave of a regular teacher. Regular substitutes receive a prorated annual salary with full benefits.
Petitioner was assigned to teach the class of Peter Meyers, a regular teacher who had been moved to a smaller special education class for an indeterminate duration. She taught Meyers’ class every day that semester and the next. Although her teaching responsibilities remained the same, on March 21, 1990 petitioner’s formal status changed. Because a regular teacher, Michelle Nevis, had been granted a child care leave, a salary line opened and petitioner (who was certified as a special education teacher on February 1, 1990) received a special appointment as a regular substitute for the balance of the 1989-1990 school year.
In the BOCES system, per diem substitutes are placed in a pool at the beginning of each school year, which consists of two five-month terms (September-January and February-June). When a line opens during the school year, BOCES gives that line to the most senior per diem substitute in the pool but leaves the substitute in the class he or she is teaching at that time. Thus, although petitioner, the most senior per diem substitute, filled Nevis’ line, she continued to teach Meyers’ class every day, as she had done since November 1989.
*113 Petitioner returned to BOCES the following school year (1990-1991), again as a per diem substitute. At that time, she was asked to cover the class of Robert Aiken, who had been temporarily assigned to serve as a coordinator at the school while an assistant principal, Audrey Bernard, took a child care leave for an unspecified time period. As she did for Meyers, petitioner taught Aiken’s class every day during his absence.
In December 1990, Bernard returned from leave and Aiken reclaimed his class from petitioner. However, during petitioner’s time as Aiken’s replacement, a new class and a new line were created for a regular teacher. BOCES formally appointed petitioner to a probationary special education teaching position, effective December 17, 1990, and informed petitioner that her probationary term would expire December 17, 1993.
During her probationary period — unlike her nine months as a substitute for Meyers and Aiken — petitioner was formally evaluated by school officials. On October 20, 1993, BOCES notified petitioner that she would not be recommended for tenure and would be discharged effective December 16, 1993.
Petitioner then commenced a CPLR article 78 proceeding seeking to annul BOCES’ determination on the ground that she had actually completed her three-year probationary term in November 1992 and thus had acquired tenure by estoppel. More specifically, petitioner claimed that for the 11 months preceding her probationary appointment, she had in fact been employed by BOCES as a full-time "regular substitute” and was therefore entitled to 11 months of "Jarema credit” toward tenure under Education Law § 2509 (1) (a).
Supreme Court granted her petition and reinstated her as a full-time, tenured teacher retroactive to February 1, 1993 with back pay, noting that since "functionally” petitioner had been a regular substitute teacher from February 1,1990 to December 17, 1990 and such period satisfied the "one full term requirement,” she was entitled to Jarema credit for both the spring and fall 1990 terms. On BOCES’ appeal, the Appellate Division reversed, holding that because she had replaced a teacher reassigned for an indeterminate period of time, petitioner’s service as a per diem substitute was not the equivalent of service as a regular substitute and therefore she did not have a clear legal right to tenure by estoppel (227 AD2d 635). We now reverse.
Analysis
The Education Law requires a probationary period of three years for a certified teacher to secure tenure (Education Law *114 § 3014 [1]; see also, Education Law §§ 3001, 3006, 3010; Matter of Bradford Cent. School Dist. v Ambach, 56 NY2d 158, 163). Unlike tenured teachers — who can hold their positions during good behavior and competent service, and are subject to dismissal only after formal disciplinary proceedings (Education Law §§ 3020-a, 3014 [2]) — probationary teachers can be terminated at any time during the probationary period, for any reason and without a hearing (Education Law § 3014 [1]; Matter of Venes v Community School Bd., 43 NY2d 520, 525; James v Board of Educ., 37 NY2d 891, 892).
Upon recommendation of the district superintendent of schools, BOCES must grant or deny tenure during the probationary term, and if not recommended for tenure a teacher must receive written notice no later than 60 days before expiration of the probationary term (Education Law § 3014 [2]). Tenure by estoppel results "when a school board accepts the continued services of a teacher or administrator, but fails to take the action required by law to either grant or deny tenure prior to the expiration of the teacher’s probationary term” (Matter of McManus v Board of Educ., 87 NY2d 183, 187).
The three-year probationary period can, however, be reduced to one year through "Jarema credit,” named for the bill’s sponsor, Assemblyman Stephen J. Jarema (see, Mem in Support, Bill Jacket, L 1936, ch 680, at 36-37). As provided in Education Law § 2509 (1) (a),
"in the case of a teacher who has rendered satisfactory service as a regular substitute for a period of two years * * * the probationary period shall be limited to one year.”[1]
Jarema credit cannot exceed two years. The "regular substitute” service, moreover, must be performed before the probationary appointment begins (Matter of Robins v Blaney, 59 NY2d 393, 398-399). And it must be continuous for at least one school term (Matter of Lifson v Board of Educ., 66 NY2d at 898, supra; see also, Appeal of Czajkowski, 34 Ed Dept Rep 589, 592 [rejecting teacher’s claim to Jarema credit based on incomplete term of regular substitute teaching]).
Here, petitioner claims that she acquired tenure by estoppel based on actual continuous service as a special education *115 substitute at least from February 1, 1990 (the date of her certification) to December 17,1990 (the date of her probationary appointment). BOCES, however, argues that when determining Jarema credit, the relevant inquiry is not whether, measured by hindsight, petitioner taught continuously for at least one full term; rather, what is important is whether BOCES was aware at the beginning of the term that petitioner was filling a vacancy created by a definite leave of absence of a term or more.
The essential difference, thus, centers on the meaning of the ambiguous term "regular substitute,” which is not defined in the statute. Petitioner urges a test based on the nature and continuity of the service actually performed. BOCES, by contrast, claims that "regular substitute” can only be defined by the anticipated duration of the replaced teacher’s absence. Neither the statute nor its legislative history provides the answer.
BOCES insists that the distinction it advances between "definite” and "indefinite” absences of replaced teachers — BOCES’ key to defining service as a "regular substitute” — is found in decisions of the Commissioner of Education. While not binding on the Court, the Commissioner’s decisions offer useful guidance (see, Matter of McManus v Board of Educ., supra, at 188).
The distinction between "definite” and "indefinite” absences can be traced to the Commissioner’s decision in Matter of Ducey (65 NY St Dept Rep 65). There the issue was whether a teacher should receive seniority credit for full-time regular substitute service rendered prior to the teacher’s probationary appointment. By analogy to Jarema credit, the Commissioner recognized that substitute service can be classified as either "regular” or "itinerant,” and that only the former counted toward reduction of the three-year probationary period. A "regular substitute,” according to the Commissioner, "is one who takes over the class of another teacher upon a permanent substitute basis; i.e., under circumstances where the regular teacher for maternity reasons, or for sabbatical or sick leave, or for some other reason, has been given a definite leave of absence. This contemplates a regular assignment for at least a term” (id., at 67). An "itinerant substitute,” by contrast, is "a person who is called in for a half a day, for short periods or for a week or more, to take the place of a teacher who is temporarily absent because of sickness or otherwise” (id., at 67). Plainly, the Commissioner used the phrase "definite leave of absence” not as an essential element of regular substitute ser *116 vice but as illustrative of factors distinguishing a "regular” from an "itinerant” substitute.
Most significantly, the Commissioner in Ducey cautioned school districts not to use technicalities to deny teachers credit for actual regular substitute service. "The failure of a board of education to 'assign’ for a definite term and to pay upon an annual basis would not, however, alter the status of the teacher as a regular substitute if it appears as a matter of fact that she has taught regularly during the term” (id., at 67). Thus, the lesson of Ducey is not that rigid lines must be drawn between "definite” and "indefinite” absences in determining the status of a substitute teacher but rather that the conclusion should be based on the substitute’s actual service.
Matter of Waterman (13 Ed Dept Rep 68) and Matter of Artale (13 Ed Dept Rep 84) underscore that lesson. As the Commissioner recognized in Waterman, "while petitioner may have been hired as a per diem substitute teacher to perform her services on an itinerant basis, she did in fact perform the duties of a regular substitute teacher. As a regular substitute, petitioner was entitled to the credit which respondent gave for her services in this capacity” (13 Ed Dept Rep at 70).[2] Similarly, in Artale, the Commissioner reaffirmed the principle that a "[petitioner is entitled to credit as a substitute teacher whether he was hired as a per diem substitute or as a regular substitute if he in fact performed the duties of a regular *117 substitute continuously for a term or more in the area in which he was originally employed” (13 Ed Dept Rep at 86).[3]
We therefore cannot agree with BOCES that the Commissioner of Education reads service as a "regular substitute” to depend on the nature of the replaced teacher’s absence, and indeed find support in those decisions for petitioner’s position that what controls is the character of the teacher’s actual service.
While this Court has not decided the precise issue before us, we have in other contexts made clear that tenure rules should be read broadly in favor of the teacher and that function rather than label should control when a probationary period commences.
As we explained in Ricca v Board of Educ. (47 NY2d 385), for example,
"[t]he tenure system is not an arbitrary mechanism designed to allow a school board to readily evade its mandate by the creation of technical obstacles on a qualified teacher’s trail to tenure. * * * Rather it is a legislative expression of a firm public policy determination that the interests of the public in the education of our youth can best be served by a system designed to foster academic freedom in our schools and to protect competent teachers from the abuses they might be subjected to if they could be dismissed at the whim of their supervisors” (id., at 391 [citation omitted]).
In establishing that the tenure system is to be viewed "broadly in favor of the teacher,” we made clear in Ricca that "[e]ven 'good-faith’ violations of the tenure system must be forbidden, lest the entire edifice crumble from the cumulative effect of numerous well-intentioned exceptions” (id., at 391; see also, Matter of Gould v Board of Educ., 81 NY2d 446, 451 ["(i)t is of no legal significance that respondents did not know that petitioner’s continued employment would enable her to acquire tenure by estoppel”]). Noting that "we are concerned not with *118 the changing labels placed upon the position by respondents, but rather with the realities of the position and its accompanying duties,” this Court in Ricca reversed the Appellate Division and ordered petitioner reinstated with tenure, measuring his probationary period from the date of his eligibility for, rather than formal appointment to, that position (47 NY2d at 392-393).
Similarly, in Matter of McManus v Board of Educ. (87 NY2d 183, supra), we concluded that the school district’s label "acting” principal could not mask the fact that petitioner was in fact performing probationary service. Echoing the principles spelled out in Ricca, we stated: "Inasmuch as probationary periods are employed to determine if appointees are 'competent, efficient and satisfactory’ for purposes of recommending tenure, there is no reason why petitioner’s service following her initial appointment should be considered anything less than time accrued towards reducing the official three-year probationary period the statute requires. Tenure evaluations can be made after three years regardless of the title under which the probationer serves and a Board may not undermine the policies behind the tenure system and artificially extend the probationary period by designating a position 'acting’ or 'temporary’ ” (id., at 187-188).
As often happens in cases that reach us, good arguments are made on both sides of the issue. In particular, BOCES urges that the salutary purpose of the definite term requirement is predictability — that only when a substitute teacher replaces a teacher expected to be absent for a definite period is the district aware that the teacher will be accumulating Jarema credit and that it must allocate administrative resources for evaluation. To sanction a "surprise” acquisition of tenure by estoppel, argues BOCES, would both saddle school districts with the administrative burden of tracking the probationary term for teachers on a day-to-day basis and deny them the full three years in which to consider qualifications for tenure.
Such an argument, however, assumes the wrong perspective on the tenure rules, which this Court has made clear should be read so as to discourage a board’s use of technical obstacles and manipulable labels that can deprive a qualified teacher of tenure rights (see, e.g., Ricca v Board of Educ., supra, at 391; Matter of Gould v Board of Educ., supra, at 452; Matter of Baer v Nyquist, 34 NY2d 291, 299).
Nor does the distinction between "definite” and "indefinite” leaves in fact assure BOCES predictability or certainty, as il *119 lustrated by Appeal of MacPherson (25 Ed Dept Rep 124). Rejecting petitioner’s claim that an enforceable contract existed for the entire year when he was appointed, effective September 1, 1984 through June 30, 1985, to teach the classes of a suspended teacher awaiting disciplinary charges, the Commissioner noted that:
"petitioner was employed by respondent as a regular substitute teacher, in the usual sense of that term. A regular substitute teacher is one who takes over the class of a probationary or tenured teacher on a permanent substitute basis — that is, for a period expected to be a term or more (Matter of Ducey, 65 St Dept Rep 65). The position in which the regular substitute teacher serves remains encumbered by the probationary or tenured teacher” (id., at 126).
MacPherson both supports the view that a "definite term” is not a requirement for regular substitute service and demonstrates that even where a regular substitute is engaged for a "definite term” to replace a tenured teacher, the absence may end unexpectedly and the tenured teacher can insist upon early return to the encumbered position.
What we learn from Ricca and McManus, as well as from Waterman and Artale, is that it is not so much the "expectancy” as the actual fact that determines outcome. Here, petitioner taught class continuously — every school day, Monday through Friday — for at least one full semester before her formal appointment to a probationary term. Had she missed even a few days, she might not have qualified for Jarema credit (see, Appeal of Czajkowski, 34 Ed Dept Rep at 591-592, supra). If indeed there is an "administrative burden” in evaluating teachers who stand before a class every single day for the full semester, that is surely in the interest of the students and all concerned.
In the end it is these policy considerations that are highly persuasive in answering the novel question before us.[4] We therefore conclude that petitioner earned Jarema credit begin *120 ning February 1, 1990, which combined with her additional service entitled her to tenure.
BOCES’ remaining contentions are without merit.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of the Supreme Court, Suffolk County, reinstated.

. Although BOCES tenure provisions are set forth in section 3014 of the Education Law, the Jarema credit provision of section 2509 (1) (a) has been applied to BOCES (see, Lifson v Board of Educ., 124 Misc 2d 483, 485, affd 109 AD2d 743, affd 66 NY2d 896). Neither party contests its general applicability here.

. The dissent would distinguish Waterman on the ground that the "circumstances under which the regular teacher’s absence took place are not described.” (Dissenting opn, at 123). Of much greater significance, however, is what is described in Waterman. The teacher was employed to "perform her services on an itinerant basis” — in other words, to replace teachers absent for short-term, indefinite periods — but nonetheless earned Jarema credit because her actual substitute service was continuous. Waterman thus undercuts the dissent’s insistence that Ducey flatly restricted lawful "regular substitute” service to fixed absences.
Moreover, as the dissent acknowledges, the Commissioner in seniority and salary credit cases has explicitly rejected a "definite term” requirement in favor of a functional approach to regular substitute service (see, Matter of Matera, 17 Ed Dept Rep 459, 460; Matter of Nuzzi, 8 Ed Dept Rep 97, 98-99, petition dismissed sub nom. Matter of Board of Educ. v Nyquist, 60 Misc 2d 99; compare, Appeal of Carey, 31 Ed Dept Rep 394, 396 ["©here is a distinction between Jarema credit and seniority credit”], with Matter of Silver, 19 Ed Dept Rep 444, 448 ["©here is no basis in logic for distinguishing between credit for the purpose of completion of a probationary period and credit for seniority”]).

. BOCES wrongly contends that Matter of Axel v Board of Educ. (44 NY2d 667) — a case where teachers sought seniority credit for continuous substitute service rendered under per diem certificates issued by the New York City Board of Education — "implicitly discredited” the rationale advanced in Waterman and Artale. Rather than a rejection of the Commissioner’s Jarema credit rulings, our holding was narrow: that the terms of the relevant collective bargaining agreement and by-laws precluded relief.

. The dissent does not address the policy concerns but instead rests on a reading of particular decisions of the Commissioner of Education. While we disagree with the dissent’s view of those decisions and believe our reading is in line with those administrative holdings, we note that how the Commissioner might answer the question we now confront would not in any event supplant this Court’s independent responsibility to interpret the statute. Nor can we agree with the dissent’s narrow reading of our own tenure cases.