Joseph A. EMMA, Jr., Plaintiff,

v.

SCHENECTADY CITY SCHOOL DISTRICT; School Board of the City of Schenectady; Warren Snyder, individually and as President and a member of the Schenectady City School Board; Ben Wiles, individually and as Vice–President and a member of the Schenectady City School Board; Frederick Griesback, individually and as a member of the Schenectady City School Board; Thomas Kiesow, individually and as a member of the Schenectady City School Board; Stephen Russell, individually and as a member of the Schenectady City School Board; Armando Tebano, individually and as a member of the Schenectady City School Board; Elizabeth Varno, individually and as a member of the Schenectady City School Board; Jeffrey Jazinzewski, individually and as Past President and member of the Schenectady City School Board; Raymond Colucciello, individually and as Superintendent of Schools for the Schenectady City School District; John Falco, individually and as Assistant Superintendent of the Schenectady City School District; Suomi Amodeo, individually and as an employee for the Schenectady City School District, Defendants.

No. 97–CV–0774.

United States District Court, N.D. New York.

Nov. 17, 1998.

Galvin & Morgan, Delmar, NY, for Plaintiff; Madeline Sheila Galvin, of counsel.

Plunkett & Jaffe, P.C., Albany, NY, for Defendants; Patrick E. Brown, of Counsel.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Joseph A. Emma, Jr. ("Emma" or "plaintiff") brought this action pursuant to 42 U.S.C. §§ 1983, 1985 alleging, *inter alia,* that defendants Schenectady City School District (the "District") and the School Board of the City of Schenectady (the "Board") and its individual members (collectively the "defendants"), violated his due process rights under the Fourteenth Amendment to the United States Constitution by denying him tenure in his position as principal in the District. Defendants now move for summary judgment dismissing the Complaint and for attorneys fees pursuant to 42 U.S.C. § 1988. Plaintiff cross-moves for summary judgment on all claims.

## I. Background

Plaintiff filed his Complaint on May 30, 1997. The Complaint contains claims under 42 U.S.C. §§ 1983, 1985 stating various grounds for alleged violations of plaintiff's due process right to tenure, and claims of harassment and a hostile work environment.[1] Plaintiff seeks reinstatement as District principal, compensatory and punitive damages, and attorneys fees.

Emma was hired by the District on or about August 1990 as Elementary School Assistant Principal, working at Pleasant Valley and Van Corlaer Elementary Schools through June 1991. Notably, for a three month period during his appointment as Assistant Principal, Emma served as interim principal at Van Corlaer due to the illness and subsequent death of then-Principal Anthony Parisi ("Parisi"). Around September 1991, Emma was appointed Elementary School Principal at Pleasant Valley, another school in the District, and received a three-year probationary appointment running from August 1991 through August 1994. During his tenure, Emma was under the direct supervision of Edward Rock ("Rock"), Assistant Superintendent for Elementary Education and Superintendent of Schools Raymond Colucciello ("Colucciello").

As an administrator in the District, Emma was a member of the Schenectady Supervisory Association (the "Union") and covered by the terms of the Collective Bargaining Agreement ("CBA") between the District and the Union. The CBA provided that each administrator must be evaluated annually by September 1st, or March 1st, in the event

1. Plaintiff relies on federal sexual harassment precedent in alleging violations of his civil rights based on claims of harassment and a hostile work environment.

2. Article IV of the CBA provides detailed procedures governing the filing and hearing of employee grievances. Specifically, the CBA specifies four integrated stages designed to promote the informal resolution of employee grievances. In the first two stages, the grievant attempts to resolve the matter through meetings with his immediate supervisor and Superintendent of Schools ("Superintendent"). See CBA Art. IV §§ (5),(6). If the grievant is not satisfied with the decision of the Superintendent, stage three permits the grievant to seek a hearing before the

there was a question regarding the administrator's continued employment in the District. See Def. Mem. of Law Ex. E, CBA Art. XV. The CBA also provides for a grievance procedure whereby employees can arbitrate alleged violations of the CBA. See id. at Art. IV.[2]

It is undisputed that Rock, Emma's supervisor, did not prepare an evaluation of the plaintiff by March 1994. While Rock did not complete a written evaluation of the plaintiff prior to his retirement in May 1994, he recommended plaintiff for tenure as District principal. Around April 1994, the Board convened to discuss personnel matters that included, inter alia, a decision regarding plaintiff's tenure. Rock did not attend this meeting. From May 1994 through June 1994, plaintiff was on sick leave due to a back injury that resulted from a fall on school premises. In light of Rock's recommendation that plaintiff receive tenure and that plaintiff did not receive an evaluation by March 1st (required under the CBA if the administrator's continued employment is in question), Union President Charles Smith ("Smith") wrote Superintendent Colucciello in June 1994, requesting that plaintiff be recommended for tenure at the July 1994 Board meeting, or alternatively, that plaintiff's probationary status be extended to no later than March 1995. See Def. Mem. of Law Ex. F. On July 15, 1995, over one-month before the parties believed plaintiff's probationary period was to expire, plaintiff signed an agreement to extend his probationary period ("Extension Agreement") as District principal until August 19, 1995.[3]

Board of Education ("Board"). See id. at § (7) on the matter. If the grievant remains unsatisfied with the Board's decision, stage four entitles the grievant to submit the grievance to arbitration, upon timely notice to the Board. See id. at § (8).

3. The Extension Agreement stated:

My probationary period as an elementary [school] principal with the [District] will expire on August 19, 1994. I have been advised that I will not be granted tenure this year.

In lieu of such action being taken, I agree that my probationary period shall be extended until August 19, 1995. . . . I agree that I will not claim tenure by estoppel by virtue of employment at the [District] beyond August 19, 1994, and I

The Extension Agreement was signed by plaintiff, Superintendent Colucciello, and Union President Smith.[4] Plaintiff characterizes the Extension Agreement as a "loop hole" that was used to deny him tenure and force him into signing an extension of his probation. *See* Pl. Mem. of Law at 3.

After accepting a position as principal at another elementary school in the District, plaintiff was appointed Assistant Director of Adult and Continuing Education at Washington Irving Educational Center in November 1994, for a new three-year probationary period ending November 1997. *See* Def. Mem. of Law Exs. J, K; Pl. Mem. of Law at 5. Because this position was in another school district, the District treated plaintiff's appointment as a resignation of his current position. *See* Def. Mem. of Law Ex. P. In his new position, plaintiff alleges that his immediate supervisor, Suomi Amodeo ("Amodeo"), and others purposefully harassed the plaintiff and created a hostile work environment, prompting plaintiff to seek alternative employment in other school districts. *See* Pl. Mem. of Law at 5. Specifically, plaintiff alleges that he was subjected to verbal abuse, not informed of scheduling changes in staff meetings, unfairly accused of taking school files, had his paycheck intentionally withheld, and his W–2 earnings statement overstated. *See* Compl. at ¶¶ 163–202, 225–257. Concurrently, plaintiff requested, and was granted, a leave of absence "for personal reasons," effective August 1996 through June 1997. *See* Def. Mem. of Law Exs. L, M.

Plaintiff was informed that an acceptance of a new position during the leave of absence would constitute a resignation from his current position in accordance with CBA Art. XIV (3)(e). *See id.* at Ex. N. Plaintiff, however, argues that it was common practice to permit administrators to seek temporary alternative employment while on leave and still retain their current position. *See* Pl. Mem. of Law at 5; Compl. at ¶ 210. Around August 1996, while on leave, plaintiff accepted a position as Vice–Principal at a school in the Kingston City School District ("Kingston District"). Not surprisingly, the District treated plaintiff's actions as a resignation from his current position in the District. *See* Def. Mem. of Law Ex. P. Plaintiff is currently employed by the Kingston District.

## II. DISCUSSION

### A. The Standard for Summary Judgment

The standard for summary judgment is well-settled. Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Chertkova v. Connecticut Gen. Life Ins. Co.,* 92 F.3d 81, 86 (1996). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that

---

agree that by March 1, 1995, the Superintendent will notify me that he may either grant or refuse me tenure with the same consequences and exactly in the same manner as if such action took place now. I understand that my services may be terminated during the next school year in the same manner as any other probationary teacher. I acknowledge that I enter into this agreement of my own free will and without coercion and have been given the opportunity to consult with a representative of my choice. I acknowledge that the purpose of this agreement is to give me an opportunity to continue my employment, which is now in jeopardy.
*See* Def. Mem. of Law Ex. G.

4. By the terms of the Extension Agreement, it is apparent that the parties believed that plaintiff's original probationary period ending August 1994 and did not include the time plaintiff served as interim principal at Van Corlaer.

there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the non-moving party; that is, whether the non-movant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds, however, could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

■ Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985) *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & H.R. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

It is with these considerations in mind that the Court addresses defendants' motion for summary judgment.

## B. Tenure as a Protected Property Interest

### 1. Tenure During Probationary Period

The Court notes at the outset that the parties disagree as to when plaintiff's probationary period expired. The dispute primarily centers on whether plaintiff's three-month service as interim principal qualified as substituted service under N.Y. Educ. Law ("NYEL") § 2509(1)(b) such that plaintiff's probationary period would have expired as of May 1994. The resolution of the issue is of critical importance given the complicated sequence of events surrounding plaintiff's claims. Because the Court will address the issue of substituted service and "Jarema" credit later on in the context of tenure by estoppel, the following analysis assumes that plaintiff's probationary period expired August 1994.

■ Plaintiff argues that his denial of tenure constitutes the loss of a protected property and liberty interest. *See Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629 (2d Cir.1996), *cert. denied*,—— U.S. ——, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997). To establish a protected property interest, plaintiff must establish a legitimate claim of entitlement to continued employment as a tenured principal in the District. *See Perry v. Sindermann*, 408 U.S. 593, 599–603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Donato*, 96 F.3d at 629; *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 965 (2d Cir.1988); *Simard v. Board of Educ.*, 473 F.2d 988, 992 (1973) (noting that a "unilateral expectation" of continued employment is insufficient to create a protected property interest); *Greenwood v. State of New York*, 939 F.Supp. 1060, 1068 (S.D.N.Y.1996) (noting that a property interest arises only when an individual possesses a legitimate claim of entitlement to continued job tenure). In making his argument, plaintiff relies on certain notification procedures required under state education law and his union contract governing the tenure process. Thus, state law and the CBA guides the court in deciding whether "plaintiff possessed only an unprotected unilateral expectation of employment, or instead had a constitutionally-protected 'legitimate claim of entitlement.'" *Donato*, 96 F.3d at 629 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

■ Courts have generally held that a teacher or administrator has no legal entitlement claim to tenure during their probationary period. *See Donato*, 96 F.3d at 629

("New York law provide[s] no basis for [plaintiff] to believe that [he] had a legitimate claim of entitlement to continued employment."); *Huntley v. Community Sch. Bd. of Brooklyn*, 543 F.2d 979, 984 (2d Cir. 1976) (same), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977); *Elmendorf v. Howell*, 962 F.Supp. 326, 332 (N.D.N.Y.1997); *Conte v. Board of Educ.*, 58 A.D.2d 219, 397 N.Y.S.2d 471, 473 (4th Dep't 1977). Indeed, NYEL § 3012(1)(b) expressly states that the service of a principal may be discontinued at any time during the probationary period on the recommendation of the superintendent and a majority vote of the board. This affords the superintendent and board broad discretion in denying tenure and dismissing probationary employees. *See Harrison v. Goldstein*, 204 A.D.2d 451, 611 N.Y.S.2d 623, 624 (2d Dep't), *appeal dismissed*, 84 N.Y.2d 922, 621 N.Y.S.2d 520, 645 N.E.2d 1220 (1994). Therefore, during his probationary period, plaintiff had no legal entitlement to tenure such that defendants' failure to confer tenure would give rise to a due process violation. Recognizing this well-settled precedent, plaintiff attempts to create a legal entitlement to tenure by alleging procedural defects regarding certain notification requirements contained in state education law and plaintiff's CBA.

### i. State Law

Plaintiff contends that defendants' failure to follow prescribed statutory procedures entitled him to a protected property right in tenure and continued employment in the District. *See* Pl. Mem. of Law at 6–7. Specifically, plaintiff argues that he was deprived the requisite notification by the Superintendent and Board regarding whether he would be recommended for tenure. Plaintiff's argument necessarily brings into play state law.

First, NYEL § 3012 requires notification by the superintendent of schools to each person not recommended for tenure.[5] An analogous notification requirement is found in NYEL § 3031(a) requiring the Board of Education to review the superintendent's recommendation not to confer tenure or recommend termination, and provide the probationary employee notice of the intended recommendation, an opportunity to file a response, and the date of the board meeting at which it is to be considered.[6] *See Donato*, 96 F.3d at 629. When viewed together, these statutes require the employee be provided notice at two distinct times—when the superintendent first states that he will not recommend the employee for tenure, and after the recommendation is reviewed by the Board of Education pending a formal hearing on the matter. *See Opert*, 352 N.Y.S.2d at 350 ("In order for [s]ection 3031 to be called into play, the [superintendent] must make a recommendation to the Board of Education that appointment on tenure not be granted to a probationary employee.").

---

5. N.Y. EDUC. LAW § 3012(2) (McKinney 1995) states:

At the expiration of the probationary term of a person appointed for such term ... the superintendent of schools shall make a written report to the board of education ... recommending for appointment on tenure those persons who have been found competent, efficient and satisfactory.... Each person who is not to be recommended for appointment on tenure, shall be notified by the superintendent of schools in writing not later than sixty days immediately preceding the expiration of his probationary period.

Although the parties do not discuss the notification requirements under section 3012(2), the Court finds that its provisions are applicable to both teachers and administrators seeking tenure following the expiration of their probationary period. *See Opert v. Board of Educ.*, 76 Misc.2d 1025, 352 N.Y.S.2d 348 (Sup.Ct.1974); Op. Comm'r Educ. Dep't., 12 Educ. Dept. Rep. 182 (1973).

6. N.Y. EDUC. LAW § 3031(a) (McKinney 1995) states:

[B]oards of education ... shall review all recommendations not to appoint a person on tenure, and ... administrators ... employed on probation ... as to whom a recommendation is to be made that appointment on tenure not be granted or that their services be discontinued shall, at least thirty days prior to the board meeting at which such recommendation is to be considered, be notified of such intended recommendation and the date of the board meeting at which it is to be considered. Such ... administrator ... may, not later than twenty-one days prior to such meeting, request in writing that he be furnished with a written statement giving the reasons for such recommendation and within seven days thereafter such written statement shall be furnished.

State law imposes a responsibility on the superintendent to recommend tenure or to notify the employee that he will not be recommended for tenure. *See* NYEL 2509(1)(b); *Harrison,* 611 N.Y.S.2d at 624; *Matthews v. Nyquist,* 67 A.D.2d 790, 412 N.Y.S.2d 501 (3d Dep't 1979). This responsibility is neither abdicated nor affected by recommendations by other supervisory personnel. *See Matthews,* 412 N.Y.S.2d at 503. Therefore, neither the recommendation of tenure by plaintiff's then-immediate supervisor Rock nor Rock's attendance at any Board meeting discussing plaintiff's tenure was "a substitute for the responsibilities imposed by law upon the superintendent" to make a tenure recommendation. *Id.* Because the decision regarding plaintiff's tenure rested solely within the discretion of Colucciello and the Board, plaintiff's claims based on Rock's involvement do not give rise to a legally cognizable claim under section 1983.[7]

In the present case, plaintiff does not dispute that Colucciello never made a formal recommendation regarding his tenure status or his continued employment in the District. Plaintiff, aware that he was not likely to obtain tenure in 1994, voluntarily opted to extend his probationary period to continue his employment in the District and seek tenure the following year.[8] Such agreements to extend probationary periods have been held to be valid and enforceable. *See Juul v. Board of Educ.,* 76 A.D.2d 837, 428 N.Y.S.2d 319, 321 (2d Dep't 1980), *aff'd,* 55 N.Y.2d 648, 446 N.Y.S.2d 266, 430 N.E.2d 1319 (1981)[9]. Thus, plaintiff never triggered the notification requirements under NYEL § 3031(a) and is therefore unable to allege a due process violation rising out of noncompliance with the statute. *See Opert,* 352 N.Y.S.2d at

350 (noting that section 3031 applies to the procedure to be followed after the superintendent renders an *adverse* recommendation).

Assuming *arguendo,* that defendants failed to properly notify plaintiff under NYEL §§ 3012(2) and 3031(a), plaintiff would nevertheless still be without a legal entitlement claim to tenure. The failure of a superintendent to provide a probationary administrator notice of his intention not to recommend tenure within the timeframe set forth in section 3012(2) confers no right of tenure upon the administrator. *See Hazard v. Board of Educ.,* 16 A.D.2d 481, 229 N.Y.S.2d 638, 640 (3d Dep't 1962); *Brida v. Ambach,* 69 Misc.2d 900, 331 N.Y.S.2d 467, 470–71 (Sup.Ct.1972); Op. Comm'r Educ. Dep't., 12 Educ. Dept. Rep. 182 (1973). By analogy, this holding applies with equal force to the notification requirements set forth in section 3031(a). *See Hazard,* 229 N.Y.S.2d at 640. In *Hazard,* the Third Department held:

> [The] purely directory provision in [NYEL § 3012(2) ] in no way affected the substance of the legislative plan for appointment on tenure. In fact, substantially the same provision was added ... to [the section] in which the power of appointment by the board of education ... was express and so remains.... [With respect to] a statute requiring strict construction, far more explicit language would be required to warrant the conclusion that the amendment in some way divested or diluted the board's appointive power....

*Id.; see also Brida,* 331 N.Y.S.2d at 471 (adopting the holding in *Hazard* ).

Thus, defendants' alleged failure to timely notify plaintiff regarding his tenure status

---

7. Plaintiff's considerable reliance on Rock's evaluation and his attendance at the board meetings discussing plaintiff's tenure are misplaced in light of the express statutory language authorizing Superintendent Colucciello and the Board to make tenure decisions.

8. On July 15, 1994, plaintiff signed an agreement acknowledging that he would not be granted tenure and agreed, on his "own free will and without coercion" to extend his probationary period until August 1995. *See* Def. Mem. of Law Ex. G. Pursuant to CBA Art. XV § (1)(b), plaintiff would receive notification by March 1995 if Su-

perintendent Colucciello did not intend to recommend him for tenure that year. *See id.* Although plaintiff contends that this agreement was the product of coercion, he offers nothing more than broad, unsupported allegations to support this contention. Accordingly, the Court finds this allegation to be without merit.

9. The extension agreement signed by plaintiff mirrors the language of the agreement at issue in *Juul,* which the Second Department held was a "knowing and voluntary waiver[] of the protections afforded by the Education Law." *Juul,* 428 N.Y.S.2d at 321.

cannot, in and of itself, give rise to a due process violation or a legal entitlement to tenure. Because plaintiff was only entitled to be considered for tenure in accordance with state education law and the CBA, plaintiff fails to establish a protected property or liberty interest. *Accord Dube v. State Univ. of New York*, 900 F.2d 587, 599 (2d Cir.1990), *cert. denied sub nom.*, *Wharton v. Dube*, 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991).

Plaintiff's various due process claims grounded in his liberty interest in a hearing are also without merit. New York State Education Law vests tenure decisions in the school board and a probationary employee may be denied tenure without being granted a hearing. *See Cohen v. Litt*, 906 F.Supp. 957, 966 (S.D.N.Y.1995); *Bergstein v. Board of Education*, 34 N.Y.2d 318, 357 N.Y.S.2d 465, 313 N.E.2d 767 (1974); *Conte*, 397 N.Y.S.2d at 473. Thus, plaintiff's probationary status does not confer a property right in continued employment that "would trigger a procedural due process right" to a hearing. *Cohen*, 906 F.Supp. at 966. A public employee may, however, be entitled to a hearing if there has been a public dissemination of charges that implicate the employee's reputation and hinder his opportunity to seek alternative employment. *See Roth*, 408 U.S. at 573, 92 S.Ct. 2701 (requiring a "stigma or other disability that foreclosed [plaintiff's] freedom to take advantage of other employment opportunities"); *Donato*, 96 F.3d at 630 (noting that while a hearing is appropriate in cases of public charges of dishonesty and immorality, it is not required where employee alleges "free-standing defamatory statements"); *Longarzo v. Anker*, 578 F.2d 469, 472 (2d Cir.1978) (same); *Gentile v. Wallen*, 562 F.2d 193, 197 (2d Cir.1977) (same); *Simard*, 473 F.2d at 992; *Harrison*, 611 N.Y.S.2d at 625; *O'Dea v. School Dist. of the City of Niagara Falls*, 122 A.D.2d 553, 504 N.Y.S.2d 895, 895 (4th Dep't 1986) ("Petitioner was not 'stigmatized' because no charges were made or published which adversely affected her reputation or integrity, and therefore, she was not entitled to a hearing."); *Baronoff v. Board of Educ.*, 72 Misc.2d 959, 340 N.Y.S.2d 128 (Sup.Ct.1973) (noting that plaintiff must allege lost employment oppor-

tunities, curtailment of an express or implied promise of continued employment, or threatened infringement of fundamental rights to invoke due process procedural protection).

Plaintiff has failed to demonstrate how he has been "irreparably tarred [by][d]efendants' charges against him." *See* Pl. Mem. of Law at 12. Furthermore, plaintiff has neither alleged specific instances where defendants published information that adversely affected plaintiff's reputation nor how defendants' actions have hindered his ability to seek other employment. Indeed, plaintiff's argument is unpersuasive in light of his ability to secure employment in another district. Accordingly, plaintiff's due process claim on this ground is without merit.

### ii. Collective Bargaining Agreement

Plaintiff also alleges that he is entitled to tenure because of defendants' failure to comply with certain provisions of the CBA requiring timely evaluation of every administrator. *See* CBA Art. XV. The CBA requires that an administrator be evaluated annually, by September 1st, and by March 1st, if there are questions regarding the administrator's continued employment. *See id.* at § (1)(b). Plaintiff argues that these provisions of the CBA vested an "absolute contractual right" sufficient to create a property interest that plaintiff be evaluated by March 1st given that there was a question whether he would receive tenure in 1994 and continue to work in the District. *See* Pl. Mem. of Law at 7. The parties do not dispute that plaintiff did not receive the requisite evaluation by March 1st.

Here, the Court must determine whether a contractual right gives rise to a "legitimate claim of entitlement and thus a constitutionally protected property interest." *S & D Maintenance*, 844 F.2d at 966. In general, " '[a] contract dispute, in and of itself, is not sufficient to give rise to a cause of action under section 1983.' " *Walentas v. Lipper*, 862 F.2d 414, 418 (2d Cir.1988), *cert. denied*, 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989); *see also S & D Maintenance*, 844 F.2d at 967; *Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir.1987). As the Second Circuit noted in *S & D Main-*

tenance, "[i]n the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not reviewing) the employment relationship without cause." 844 F.2d at 967. Courts have also limited the creation of a property interest to situations where the employee has obtained tenure or a "clearly implied promise of contractual employment." See Perry, 408 U.S. at 600–02, 92 S.Ct. 2694; Roth, 408 U.S. at 578, 92 S.Ct. 2701 (holding that a property interest is not created where employee had neither tenure rights nor promise of re-employment). Notably, in the present case, plaintiff does not argue, nor do the facts establish, such a scenario.

Plaintiff's claim of a lack of due process in the evaluation and tenure review procedure is unavailing. See Dube, 900 F.2d at 599. Plaintiff was to be considered for tenure in accordance with the terms of the CBA and state law, subject to the discretion of the superintendent and Board. As such, this neither created a legitimate entitlement sufficient to trigger due process protection nor conferred any rights with regard to tenure. See id.; Hauppauge Classroom Teachers Ass'n v. Millman, 35 A.D.2d 844, 317 N.Y.S.2d 461 (2d Dep't 1970).[10] Accordingly, plaintiff cannot claim a legal entitlement to tenure based on untimely notification under state law or a breach of his contractual rights under the CBA.

 Plaintiff's thirteenth cause of action, also based on a breach of the CBA, alleges that the Board's termination of his services following his re-employment in another school district was inconsistent with established District practice and policy. See Compl. at ¶¶ 339–49. CBA Art. XIV § (3)(e) specifically provides that "[a]ny administrator who engages in employment not specified in the [leave of absence] application or later

approved by waiver shall be deemed to have resigned." While plaintiff does not dispute that he accepted another position during his leave of absence, he argues that this was common practice in the District, which did not result in a termination of the employee's services.

By securing employment at another school, plaintiff's actions clearly fell within CBA Art. XIV § (3)(e), and permitted the Board to treat plaintiff's re-employment as a resignation of his current position. Assuming, however, that a contrary policy existed, plaintiff should have exhausted the grievance procedures outlined in the CBA. See CBA Art. IV §§ 5–8. Furthermore, as stated earlier, claims sounding in breach of contract do not give rise to a legally cognizable claim under section 1983.

### 2. Tenure by Estoppel

 An employee may acquire tenure either by specific award by the Board or by acquiescence and estoppel. See Matthews, 412 N.Y.S.2d at 502. Under certain circumstances, an employee may receive "tenure by estoppel" where he continues to work in his current position "beyond the expiration of his probationary period, with the knowledge and consent of the Board, and continues to be [compensated] for these services." Orshan v. Anker, 489 F.Supp. 820, 824 (E.D.N.Y. 1980); see also Speichler v. Board of Coop. Educ. Servs., 90 N.Y.2d 110, 659 N.Y.S.2d 199, 202, 681 N.E.2d 366 (1997); McManus v. Board of Educ., 87 N.Y.2d 183, 638 N.Y.S.2d 411, 413, 661 N.E.2d 984 (1995); Matthews, 412 N.Y.S.2d at 502–03. The probationary period is measured by the calendar, rather than school year. See O'Dea, 504 N.Y.S.2d at 896.

Plaintiff attempts to raise an issue of material fact by contending that he served in the position as principal beyond his probationary

---

10. The CBA afforded plaintiff a number of procedures relating to the filing of a grievance for alleged violations of the CBA. See generally CBA Art. IV. These procedures, which plaintiff apparently did not exhaust, provided for informal resolution with plaintiff's immediate supervisor, the superintendent, and the Board. See id. at §§ 5–7. Ultimately, plaintiff had the option to seek arbitration for his grievance. See id. at § 8. As

such, plaintiff's allegations regarding defendants' breach of the CBA are best resolved through the grievance procedures outlined in the CBA. See Biegel v. Board of Educ., 211 A.D.2d 969, 621 N.Y.S.2d 709, 710 (3d Dep't 1995); Goosley v. Binghamton City Sch. Dist. Bd. of Educ., 101 A.D.2d 942, 475 N.Y.S.2d 924, 926 (3d Dep't 1984).

period. Specifically, plaintiff alleges that his three-month service as interim principal should qualify as substituted service under NYEL § 2509(1)(a)[11] such that his probationary period expired in May, rather than August 1994. Although section 2509(1)(a) on its face deals with appointment as a teacher, plaintiff argues that its provisions apply with equal force to administrative personnel. Thus, plaintiff argues that he obtained tenure by estoppel when the Board failed to act on his tenure candidacy at the termination of his probationary period in May 1994.

Commonly referred to as "Jarema" credit, NYEL § 2509(1)(a) permits an employee to reduce his probationary period to one year by awarding the employee up to two years of credit for "regular substituted service." *See Speichler*, 659 N.Y.S.2d at 202, 681 N.E.2d 366; *Roberts v. Community Sch. Bd.*, 66 N.Y.2d 652, 495 N.Y.S.2d 960, 962, 486 N.E.2d 818 (1985). The regular substituted service, however, must be performed before the probationary period commences *and* must be continuous for at least one school term. *See Speichler*, 659 N.Y.S.2d at 202, 681 N.E.2d 366. Additionally, the Court must determine whether (1) the duties performed by plaintiff as interim principal fell within the same "tenure area" as an appointed elementary school principal in the District; and (2) whether defendants knowingly consented to such continued service beyond plaintiff's probationary period. *See Orshan v. Anker*, 550 F.Supp. 538, 542 (E.D.N.Y. 1982).

Defendants argue that by its express language, NYEL § 2509(1)(a) relates solely to teachers and does not apply to administrative personnel such as principal. *See* Def. Mem. of Law at 17. In making their argument, defendants rely on *Roberts*, where the New York Court of Appeals held that NYEL § 2509(1)(a) (formerly NYEL § 2573(1)(a)) was limited to teacher tenure and the analogous provision dealing with supervisory tenure "contained no parallel provision" relating to "Jarema" credit for regular substituted service. *See Roberts*, 495 N.Y.S.2d at 962, 486 N.E.2d 818. *Roberts*, however, was not the last word by the New York Court of Appeals on the applicability of "Jarema" credit for administrative personnel. Indeed, the Court of Appeals recently revisited and refined the doctrine of tenure by estoppel as it applies to school administrators and teachers. *See Speichler*, 659 N.Y.S.2d at 199, 681 N.E.2d 366; *McManus*, 638 N.Y.S.2d at 411, 661 N.E.2d 984.

In *McManus*, while not disturbing its prior holding in *Roberts* that "Jarema" credit did not apply to administrative or supervisory personnel, the New York Court of Appeals distinguished between cases where an administrator filled a vacant position, and cases where the administrator merely acted as a substitute, by "taking over a position on behalf of another who is either temporarily unable to perform the duties on a short-term basis because of sickness, leave of absence or similar reasons." *See McManus*, 638 N.Y.S.2d at 414, 661 N.E.2d 984. Thus, *McManus* focused the inquiry on whether the employee was filling a vacant position (long-term) or serving as a substitute for a temporarily incapacitated employee (short-term). *See id.* The court also held that tenure rules should be construed "broadly in favor of the teacher" and that a board "may not undermine the policies behind the tenure system and artificially extend the probationary period by designating a position 'acting' or 'temporary.'" *Id.* at 412–13, 661 N.E.2d 984; *see also Speichler*, 659 N.Y.S.2d at 204, 681 N.E.2d 366 ("[T]enure rules should be read broadly in favor of the teacher and that function, rather than label should control when a probationary period commences.")

In *Speichler*, the Court of Appeals held that the term "regular substitute" in NYEL § 2509(1)(a), should be defined by "the actual nature and continuity of the substitute service, not by the anticipated duration of the replaced teacher's absence." 659 N.Y.S.2d at

---

11. NYEL § 2509(1)(a) states, in part:
Teachers and all other members of the teaching staff ... shall be appointed by the board of education, upon the recommendation of the superintendent of schools, for a probationary period of three years, *except that in the case of a teacher who has rendered satisfactory service as a regular substitute for a period of two years ...* the probationary period shall be limited to one year ....

200, 681 N.E.2d 366. In rejecting an approach based on titles or expectancy of the term of service, the court held that the proper focus was on the substitute's actual service in determining whether an employee's service qualifies as "regular substitute service" under NYEL § 2509(1)(a). *See id.* at 203–05, 681 N.E.2d 366.

 In the present case, plaintiff was appointed as "interim" principal at Van Corlaer due to the illness and subsequent death of then-principal Parisi. Although plaintiff was not subsequently appointed as principal of Van Corlaer, he was eventually appointed as principal at Pleasant Valley, another elementary school in the District. It is undisputed that plaintiff served as principal in the District following his appointment in 1991 through May 1994 and was compensated at a principal's pay level during this time. Furthermore, defendants do not argue that plaintiff served as a principal contrary to their knowing consent or intention or that plaintiff knowingly waived his right to tenure by estoppel for services completed through May 1994. However, distinct from *Mc-Manus*, plaintiff did not serve as interim principal after taking over a position left vacant, but rather, assumed the position because the current principal was unable to work due to his illness. Therefore, plaintiff is unable to claim his service as interim principal in shortening his probationary period to May 1994. Furthermore, plaintiff's agreement to extend his probationary period to August 1995, executed prior to the expiration of his initial probationary period, forecloses any claim of tenure by estoppel. *Accord Orshan*, 550 F.Supp. at 543; *McManus*, 638 N.Y.S.2d at 414, 661 N.E.2d 984; *O'Dea*, 504 N.Y.S.2d at 895.

Because plaintiff has not established a property or liberty interest in his tenure sufficient to trigger the protections of the Due Process Clause, defendants' motion for summary judgment is granted with respect to plaintiff's First, Second, Third, Fourth, Fifth, and Thirteenth causes of action.[12]

### C. Liability Under Section 1983

Defendant Board members move for summary judgment dismissing plaintiff's section 1983 claims against each defendant in both their individual and official capacities. Defendants Schenectady City School District and the School Board of the City of Schenectady also move for summary judgment. Because official-capacity claims involve issues of municipal liability, the distinction between personal-capacity and official-capacity suits is critical in analyzing the liability and defenses of the defendants.

 The Supreme Court, in *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), explained the relevant differences between the two types of claims:

> Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.

*Id.* at 165–66, 105 S.Ct. 3099 (emphasis in original) (internal citations omitted) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Because official-capacity claims are equivalent to claims against the entity, a plaintiff must establish that "the entity's policy or custom played a role in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 24–25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (quoting *Graham*, 473 U.S. at 166, 105 S.Ct. 3099). This necessarily requires a *Monell*-type analysis sufficient to predicate liability for the governmental entity. For the same reasons, individuals sued in their official capacity are entitled only to those

---

**12.** Having found that plaintiff does not have a protected property right under the doctrine of tenure by estoppel, his tenth and eleventh causes of action claiming violations of section 1985(3) based on this ground cannot stand. The Court analyzes all of plaintiff's section 1985(3) claims in section D, *infra.*

immunities and defenses that the governmental entity itself possesses. *See id.* at 25, 112 S.Ct. 358.

In contrast, personal-capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* Thus, in establishing personal liability in a section 1983 claim, a plaintiff need only show that "the [government] official, acting under color of state law, caused the deprivation of a federal right." *Id.* (citing *Graham,* 473 U.S. at 166, 105 S.Ct. 3099). Accordingly, a plaintiff need not show a connection to a governmental policy or custom that is required under *Monell* and its progeny. When such government officials are sued in their personal capacities, "they may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Id.* Based upon this distinction, district courts have dismissed official-capacity claims against individuals as redundant or unnecessary where *Monell* claims were also asserted against the entity. *See, e.g., Union R.R. v. Village of S. Barrington,* 958 F.Supp. 1285 (N.D.Ill.1997); *Vance v. Santa Clara,* 928 F.Supp. 993 (N.D.Cal.1996); *Doe v. Rains Indep. Sch. Dist.,* 865 F.Supp. 375, 378 (E.D.Tex.1994), *rev'd on other grounds,* 66 F.3d 1402 (5th Cir.1995); *Doe v. Douglas County Sch. Dist.,* 775 F.Supp. 1414, 1416 (D.Colo.1991). In this case, because plaintiffs bring both official-capacity claims against the individual Board members and a *Monell*-type claim against the District and the Board, the Court dismisses plaintiff's official-capacity claims against the individual Board members and focuses on the remaining personal-capacity section 1983 claims against the individual Board members and the claims against the District and the Board.

### D. Section 1985 Claims

Plaintiff's Sixth through Eleventh causes of action allege various grounds for liability under 42 U.S.C. § 1985(3).

To establish a claim under section 1985(3), a plaintiff must allege and prove four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters and Joiners v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *see also Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087–88 (2d Cir.1993). Furthermore, the conspiracy must also be motivated by " 'some racial or perhaps otherwise class-based invidious discriminatory animus behind the conspirators' action.' " *Mian,* 7 F.3d at 1088 (quoting *United Bhd. of Carpenters,* 463 U.S. at 829, 103 S.Ct. 3352); *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (holding that section 1985(3) should not be interpreted as a "general federal tort law"); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994).

In *Gagliardi,* the Second Circuit expressly rejected the notion that the "class-based animus requirement does not apply to claims of conspiracy under color of state law." 18 F.3d at 194 (noting that in *Griffin,* the Supreme Court "emphasized that section 1985(3) could not be applied as 'general federal tort law' because invidious discriminatory motive is an element of the cause of action"); *see also Childree v. UAP/GA AG CHEM, Inc.,* 92 F.3d 1140, 1147 (11th Cir. 1996) ("Two types of classes come within § 1985(3)'s protection: (1) classes having common characteristics of an inherent nature—i.e., those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act."), *cert. denied,* —— U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 216 (1997); *Jews for Jesus, Inc. v. Jewish Community Relations Council,* 968 F.2d 286, 290–91 (2d Cir. 1992); *Munson v. Friske,* 754 F.2d 683, 695 (7th Cir.1985) ("[While section 1985(3) ] covers conspiracies involving animus other than racial bias such as animus based on ethnic origin, sex, religion or political loyalty ... many identifiable groups do not fall within the scope of section 1985(3) because the pro-

vision is not a writ by which the judiciary can offer comfort and succor to all groups experiencing social disapproval."); *David v. Local 801, Danury Fire Fighters Ass'n, Inc.*, 899 F.Supp. 78, 80 (D.Conn.1995) ("Section 1985(3) should only extend beyond its racial parameters if a class is afforded a suspect or quasi-suspect classification or when 'Congress has indicated through legislation that the class require[s] special protection.'") (quoting *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir.1985)).

▮▮▮ Defendants maintain that plaintiff's complaint sets forth allegations insufficient as a matter of law to maintain a claim under section 1985(3). The Court agrees. Plaintiff fails to allege that he falls within any of the classes entitled to protection under § 1985(3) or that defendants' actions were motivated by a class-based animus or discrimination.[13] Therefore, neither as an individual nor as a possible class does the plaintiff fall within the protected class status necessary to sustain a section 1985(3) claim. *See United Bhd. of Carpenters*, 463 U.S. at 838, 103 S.Ct. 3352 (holding that section 1985(3) claims do not reach conspiracies "motivated by economic or commercial animus"); *Gagliardi*, 18 F.3d at 194; *Conrad v. Perales*, 818 F.Supp. 559, 564 (W.D.N.Y.1993); *Brown v. City of Chicago*, 573 F.Supp. 1375, 1380 (N.D.Ill.1983) (holding that the class of citizens against whom police officers have committed acts of misconduct is not the sort of class-based discrimination or animus required under *Griffin* ).

Because plaintiff is unable to demonstrate the requisite class-based animus or discrimination, defendants' motion for summary judgment is granted with respect to plain-

tiff's Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh causes of action.

### E. Harassment and Hostile Work Environment Claims

▮▮▮ Plaintiff's Twelfth, Fourteenth, and Fifteenth causes of action seek to establish municipal liability for the District and the Board based on the individual defendants' alleged acts of harassment and a hostile work environment.[14] *See* Pl. Mem. of Law at 13. Specifically, plaintiff bases his harassment claim on not getting the job for which he believed he was qualified, not being informed that a staff meeting had been canceled, defendants' compliance with the express language of the CBA regarding the terms of a leave of absence, defendants' intentional withholding of his paycheck, and overstatement of his earnings on his W–2 form. *See* Compl. at ¶¶ 184–94; 203–08; 214–217; 226–28, 241. Plaintiff bases his hostile work environment claim on a meeting with his supervisor where he was berated and feared bodily harm, and many of the same allegations raised with respect to his harassment claim. *See id.* at ¶¶ 175–81.[15]

▮▮▮ To support these claims, plaintiff relies primarily on the Supreme Court's recent decision in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), where the Court addressed the "circumstances under which an employer may be held liable under Title VII ... for the acts of a supervisory employee whose sexual harassment of subordinates has created a hostile work environment amounting to employment discrimination." 524 U.S. at ——, 118 S.Ct at 2279. In his recitation of the holding in

---

**13.** Assuming plaintiff's class was defined as all "principals unfairly deprived of tenure," this would not qualify as a protected class under section 1985(3). *See* cases cited *infra*.

**14.** The District and the Board are considered municipal actors for the purposes of determining section 1983 liability. *See Jett v. Dallas Indep. Sch. Dist,* 491 U.S. 701, 735–36, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1348 (2d Cir.1994); *Huff v. West Haven Bd. of Educ.,* 10 F.Supp.2d 117, 121 (D.Conn.1998); *Zappala v. Albicelli,* 980 F.Supp. 635, 638–39 (N.D.N.Y.1997).

**15.** Plaintiff's claims, when viewed in the aggregate, are indicative of an employee dissatisfied with his prospects for advancement in the District and not a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of ... employment and create an abusive working environment." *Kolp v. New York State Office of Mental Health,* 15 F.Supp.2d 323, 326 (W.D.N.Y.1998) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 19, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); *Jemmott v. Coughlin,* 85 F.3d 61, 67 (2d Cir.1996); *Cohen,* 906 F.Supp. at 963–64.

*Faragher,* plaintiff overlooks the requirement that such a claim be predicated on a showing of impermissible class discrimination. Title VII does not bar the plaintiff from raising a claim of employment discrimination under section 1983. *See Beardsley v. Webb,* 30 F.3d 524, 527 (4th Cir.1994); *Duhart v. Fry,* 957 F.Supp. 1478, 1491 (N.D.Ill.1997); *Stoner v. Department of Agriculture,* 846 F.Supp. 738, 742 (W.D.Wis.1994). Thus, while a plaintiff may assert a claim under section 1983 "if some law other than Title VII is the source of the right alleged to have been denied," he may not, however, use section 1983 "to gain perceived advantages not available to a Title VII claimant." *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). *Cf.* 42 U.S.C. § 2000e–2(a) (requirement that plaintiff belong to a protected class). In the present case, plaintiff does not properly plead his harassment and hostile work environment claims under either the Equal Protection Clause or Title VII. Moreover, plaintiff's Memorandum of Law does not state a legal basis sufficient to support his allegations. Accordingly, defendants' motion for summary judgment is granted with respect to plaintiff's Twelfth, Fourteenth, and Fifteenth causes of action.

## F. Attorney's Fees

Defendants move for attorney's fees pursuant to 42 U.S.C. § 1988, contending that plaintiff "commenced this meritless case riddled with frivolous claims, as well as mischaracterized and unrecognized causes of action." *See* Def. Mem. of Law at 24.

▆▆▆ A plaintiff should not be assessed attorney's fees unless a court finds that his claims were "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe,* 449 U.S. 5, 15, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)). However, " 'the fact that a plaintiff may ultimately lose his case is not in itself a sufficient justifica-

tion for the assessment of fees' in favor of the defendant." *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 765, 770 (2d Cir.1998) (quoting *Hughes,* 449 U.S. at 14, 101 S.Ct. 173). To determine whether plaintiff's claims justify an award of attorney's fees "requires an evaluation of the allegations and the proof in light of the controlling principles of substantive law." *LeBlanc–Sternberg,* 143 F.3d at 770 (noting that an award of attorney's fees should be permitted " 'not routinely, not simply because [the defendant] succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious.' ") (quoting *Carrion v. Yeshiva University,* 535 F.2d 722, 727 (2d Cir.1976)). Courts also consider the impact of an award of attorney's fees against the plaintiff in light of the efforts of Congress to "promote the vigorous enforcement" of its civil rights laws. *Christiansburg Garment Co.,* 434 U.S. at 422, 98 S.Ct. 694; *see also LeBlanc–Sternberg,* 143 F.3d at 770; *Carrion,* 535 F.2d at 727.

▆▆▆ The Court declines to award attorney's fees against the plaintiff. The Court's grant of summary judgment in favor of the defendants does not, in and of itself warrant an award of fees. Plaintiff's development of an extensive factual history and the Court's careful and detailed consideration of a number of issues raised by plaintiff's complaint weigh in plaintiff's favor. *See Hughes,* 449 U.S. at 16 n. 13, 101 S.Ct. 173. Additionally, this case required an analysis of various state education law provisions and recently decided case law .[16] Accordingly, the Court finds that plaintiff's claims were not groundless, frivolous, or meritless and therefore denies defendants' motion for attorney's fees.

## III. CONCLUSION:

For all of the foregoing reasons, then, it is hereby

**ORDERED,**

that Defendants' motion for summary judgment is **GRANTED,** dismissing Plaintiff's Complaint in its entirety; and it is further

**16.** Specifically, the issue of tenure by estoppel involved the Court's analysis of recent decisions

of the New York Court of Appeals. *See infra,* section B.2.

**ORDERED,**

that Defendants' motion for attorney's fees is **DENIED;** and it is further

**ORDERED,** that Plaintiff's cross-motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**